1  JEFFREY L. HOGUE, ESQ. (SBN 234557)
   TYLER J. BELONG, ESQ. (SBN 234543)
2  JIMMIE DAVIS PARKER (SBN 252023)
   MARK A. SIMPLICIANO (SBN 331516)
3  **HOGUE & BELONG**
   170 LAUREL ST.
4  SAN DIEGO, CA 92101
   PHONE:  (619) 238-4720
5  FAX:   (619) 270-9856

6  Attorneys for Plaintiffs

7

8

9

10            **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13 CATHY SYPHERD, individually, | Case No. 5:20-CV-00921-FLA-KK |
| PATRICIA BRUMMETT, | **DECLARATION OF JEFFREY L.** |
| 14 individually, and KIMBERLY | **HOGUE IN SUPPORT OF** |
| | **PLAINTIFF'S UNOPPOSED MOTION** |
| 15 WATT, individually, and on behalf | **FOR PRELIMINARY APPROVAL OF** |
| of all others similarly situated, | **COLLECTIVE AND CLASS** |
| 16 | **SETTLEMENT** |
| Plaintiffs, | |
| 17 vs. | Complaint Filed:  May 1, 2020 |
| | FAC Filed:  June 15, 2020 |
| 18 LAZY DOG RESTAURANTS, | Trial Date:   November 16, 2021 |
| LLC, a California Corporation; and | |
| 19 DOES 1-50, | Judge:   Hon. Fernando L. |
| | Aenlle-Rocha |
| 20 | Courtroom:   6B |
| 21 Defendants | [*filed concurrently with (1) Memorandum of* |
| | *Points and Authorities, and (2) [Proposed]* |
| 22 | *Order*] |
| 23 | |

24

25

26

27

28

I, Jeffery Hogue, declare as follows:

1.     I am a principal with the law firm Hogue & Belong, duly admitted to practice before all the Courts of the State of California, and am attorney of record herein for plaintiffs, Cathy Sypherd, Patricia Brummett, and Kimberly Watt (collectively, the "Plaintiffs").  I make this declaration from my personal knowledge except as to those matters, if any, stated on information and belief, and if called as a witness, I could and would competently testify thereto.

2.     The Plaintiffs were food servers, and all applied and were rejected for employment at defendant Lazy Dog – a national restaurant chain.  The Plaintiffs brought a collective and class action against Defendant for discriminatory hiring decisions based on age.  They were apprised of their fiduciary duties, and remained faithful to those duties during the course of the litigation.

3.     A true and correct copy of the parties' Collective and Class Action Settlement Agreement and Release ("Proposed Settlement") is attached hereto as **Exhibit "A"**.   The settlement was reached after a second mediation pursuant to that mediator's proposal.

**INVESTIGATION AND ANALYSIS OF CLAIMS AMONG THE ACTIONS**

4.     The Parties in the instant action exchanged ample discovery that allowed them to intelligently value the claims asserted.

5.     On **October 27, 2020**, Plaintiffs propounded their First Set of Special Interrogatories.  This set was comprised of two interrogatories seeking the class list for the California class and the nationwide class to support Plaintiffs' ADEA and FEHA claims.

6.      On **October 27, 2020**, Plaintiffs propounded their First Set of Requests for Production, comprised of 60 requests.  These requests sought a variety of documents related to job applications for Defendant's different restaurant locations as well as other documentation provided to prospective applicants.  Upon

receiving Plaintiffs' initial discovery requests, Defendant sought a lengthy extension to respond by January 8, 2021, which Plaintiffs granted.

7.      On **January 8, 2021**, Defendant responded to Plaintiffs' First Set of Special Interrogatories. This set was comprised of two responses. Both responses were boilerplate objections to the Interrogatories, and Defendant provided no substantive responses.

8.      On **January 8, 2021**, Defendant responded to Plaintiffs' First Set of Request for Production, comprised of 60 requests.  This set was comprised of 60 responses, 20 partial responsive responses, and 40 objections to requests – without providing substantive responses.  In Defendant's substantive responses, it responded that it would only provide documents limited to its Corona, California location, despite that Plaintiffs' class action encompassed Defendant's nationwide locations.

9.      On **January 13, 2021**, Defendant propounded their First Set of Special Interrogatories to Plaintiff Patricia Brummett.  This set was comprised of 9 interrogatories seeking to have Plaintiff identify all persons that applied but were not interviewed or hired by Defendant.

10.     On **January 13, 2021**, Defendant propounded their First Set of Special Interrogatories to Plaintiff Cathy Sypherd. This set was comprised of 9 interrogatories seeking to have Plaintiff identify all persons that applied but were not interviewed or hired by Defendant.

11.     On **January 13, 2021**, Defendant propounded their First set of Special Interrogatories to Plaintiff Kimberly Watt.  This set was comprised of 9 interrogatories seeking to have Plaintiff identify all persons that applied but were not interviewed or hired by Defendant.

12.     On **January 13, 2021**, Defendant propounded their First Set of Request for Production to Plaintiff Patricia Brummett, comprised of 35 requests.

2

These requests sought a variety of documents related to the Plaintiffs complaint as well as wage statements or any documents related to income.

13.     On **January 13, 2021**, Defendant propounded their First Set of Request for Production to Cathy Sypherd, comprised of 35 requests.  These requests sought a variety of documents related to Plaintiff's complaint as well as photographs of Plaintiff spanning one year back.

14.     On **January 13, 2021**, Defendant propounded their First Set of Request for Production to Plaintiff Kimberly Watt, comprised of 35 requests. These requests sought a variety of documents related to the Plaintiffs complaint as well as social media posts or communication related to the allegations in the Complaint.

15.     On **February 5, 2021**, Plaintiffs propounded their Second Set of Special Interrogatories.  This set was comprised of 12 interrogatories seeking the class contact information for the California class and the Nationwide class periods.

16.     On **March 8, 2021**, Defendant responded to Plaintiffs' Second Set of Special Interrogatories, comprised of 12 requests.  All 12 responses were objections to the interrogatories and Defendant provided no substantive responses.

17.     On **March 29, 2021,** Defendant ultimately produced documents sought by Plaintiffs' Request for Production of Documents, Set One, but limited its responses to Defendants Corona, California location, despite Plaintiffs' request for Defendant's nationwide data.

18.     On **April 7, 2021,** Defendant took the deposition of Plaintiff Patricia Brummett.

19.     On **April 8, 2021,** Defendant took the deposition of Plaintiff Cathy Sypherd.

20.     On **April 13, 2021,** Defendant took the deposition of Plaintiff Kimberly Watt.

3

21.     On **April 16, 2021**, Plaintiff Patricia Brummett responded to Defendant's Special Interrogatories, this set was comprised of nine responses. Plaintiff asserted objections, but provided substantive responses to all nine interrogatories.

22.     On **April 16, 2021**, Plaintiff Cathy Sypherd responded to Defendants Special Interrogatories, this set was comprised of nine responses.  Plaintiff asserted objections, but provided substantive responses to all nine interrogatories.

23.     On **April 16, 2021**, Plaintiff Kimberly Watt responded to Defendants Special Interrogatories, this set was comprised of nine responses.  Plaintiff asserted objections, but provided substantive responses to all nine interrogatories.

24.     On **April 16, 2021**, Plaintiff Patricia Brummett responded to Defendant's Request for Production, this set was comprised of 35 requests. Twenty-five of the responses had partial production of documents and 10 were objections to the requests based on privilege, such as the attorney-client and attorney work-product privileges.

25.     On **April 16, 2021**, Plaintiff Cathy Sypherd responded to Defendant's Request for Production, this set was comprised of 35 requests.  Twenty-five of the responses had partial production of documents and 10 were objections to the requests based on privilege, such as the attorney-client and attorney work-product privileges.

26.     On **April 16, 2021**, Plaintiff Kimberly Watt responded to Defendant's Request for Production, this set was comprised of 35 requests.  Twenty-five of the responses had partial production of documents and 10 were objections to the requests based on privilege, such as the attorney-client and attorney work-product privileges.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

27.    On **June 15, 2021**, Defendants submitted a Supplemental Response to Plaintiffs Request for Productions Set One.  This response was comprised of 19 supplemental responses with partial production of documents.

28.    On **June 16, 2021**, as ordered by the Court, Defendant produced documents including electronic data of nearly 33,945 applicants in California and 24,022 pages of paper records.

29.    On **June 29, 2021**, Plaintiff took the deposition of Defendant's Rule 30(b)(6) witness, Brian Palko, who testified to Plaintiffs that Defendant's hiring processes and policies were uniform across the nation.  Plaintiffs deposed Palko again on **July 7, 2021**.

30.    On **July 6, 2021**, Plaintiffs propounded their Second Set of Request for Production, comprised of four requests. These requests sought out age discrimination complaints the Defendant received for the California class and Nationwide class periods.

31.    On **July 7, 2021**, Plaintiffs took the deposition of Defendant's Human Resource representative and Rule 30(b)(6) witness on certain topics, Katie Biggs.

32.    On **July 8, 2021**, Defendant took the deposition of opt-in plaintiff Karen McClure.

33.    On **July 12, 2021,** Plaintiffs took the deposition of Defendant's Human Resource representatives Shelley Reed and Mariah Machnkowski.

34.    On **July 27, 2021**, Plaintiffs propounded their Third Set of Request for Production, comprised of two requests. These requests sought payroll data covering the position in the California class and Nationwide class periods.

35.    On **July 27, 2021,** Defendant took the deposition of Plaintiffs' Expert Witness, Ted Tatos.

DECLARATION OF JEFFREY L. HOGUE IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL COLLECTIVE AND CLASS SETTLEMENT

36.     On **August 5, 2021**, Defendant responded to Plaintiffs' Request for Production Set Two. This response was comprised of 4 responses that were objections to the request.

37.     On **August 16, 2021**, Defendant submitted a Supplemental Response to Plaintiffs' Request for Production Set Two. This response was comprised of 3 responses that were all objections to the request, and one response stating that Defendant had already produced the requested documents.

38.     On **August 23, 2021,** Plaintiffs took the deposition of Defendant's Expert Witness Dr. Ali Saad.

39.     On **August 26, 2021**, Defendant responded to Plaintiffs' Request for Production Set Three.  This response was comprised of merely objections.

40.     On **August 30, 2021**, Plaintiffs took the deposition of Defendant's declarant Genny Scram.

41.     In sum, 12 depositions were taken, and 11 sets of discovery were exchanged, comprised of five sets of special interrogatories and six sets of requests for production of documents.  These 11 sets of discovery can be further broken down to 212 specific separate requests, and these requests yielded 235 responses and supplemental responses.  Plaintiffs received approximately 29,885 documents, including job application data for approximately 2,242 persons 40 years of age and older as part of Defendant's document production.

42.     Virtually all discovery that Plaintiffs propounded required lengthy meet and confer efforts.  Plaintiffs ultimately had to file four (4) Joint Motions to Compel Discovery.  On **May 6, 2021**, Plaintiffs moved to compel Defendant to further respond to Plaintiffs' Request for Production of Documents, Set One. (ROA No. 37).  On **August 9, 2021**, Plaintiffs moved to compel Defendant to further respond to Plaintiff's Request for Production of nationwide documents. (ROA No. 137).  In addition, on **August 9, 2021**, Plaintiffs filed a Motion to Compel

6

Deposition of Rule 30(b)(6) to testify relevant information based on class period and information concerning Defendant's investigations of Plaintiffs' complaints to human resources. (ROA No. 138.)  On **August 19, 2021**, Plaintiffs moved to compel Defendant to further respond to Plaintiffs' Request for Production of Documents, Set Two. (ROA No. 159).  On **September 24, 2021**, the Court granted Plaintiffs' motions in part and denied in part.  The Court ultimately ordered Defendant to produce all its nationwide hiring data and for Defendant to provide a Rule 30(b)(6) witness for the relevant class period. (ROA No. 205).

43.     A true and correct copy of Defendant's online application is attached as **Exhibit "B**."[1]

## THE ACTION WAS VIGOROUSLY LITIGATED

44.     The Parties vigorously litigated this action before finally reaching a compromise.   In total, the parties filed nine different motions, excluding discovery motions.  Four motions were pending when the case settled, and five motions were decided on the merits.   The following are the different motions that were filed:

a.     On **May 26, 2020**, Defendant filed a Motion to Dismiss [Defendant's Notice of Motion and Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(B)(6) or, in the Alternative, to Strike Class Period and Jury Demand Pursuant to 12(F); Memorandum of Points and Authorities]. (ROA No. 10.)   Defendant's motion was mooted by the Plaintiffs filing of the First Amended Complaint. (ROA No. 14.)

b.     On **June 29, 2020**, Defendant filed a Motion to Dismiss to Plaintiffs' First Amended Complaint. [ Notice of Motion and Motion to Dismiss Plaintiff's First Amended Complaint] (ROA

---

[1]     Defendant's application did not seek an applicant's social security number. Thus, the Settlement Administrator would need to obtain the social security numbers via a claim form in order to issue the proper tax forms.

7

No. 16.)  Plaintiffs filed an Opposition (ROA No. 18), and Defendant then filed a Reply. (ROA No. 19.)  On **July 24, 2020**, the Court issued an order denying Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint. (ROA No. 21.)

c.  On **May 6, 2021**, Defendant filed a Motion for Order of Evidence Sanctions. [Notice of Motion and Motion for Order for Evidence Sanctions [FRCP 37] or, in the Alternative, for an Order Compelling Plaintiffs to Disclose All Witnesses and Documents filed] (ROA No. 34.) A Joint Stipulation was filed (ROA No. 35). On May 17, 2021, the court issued an order to striking the Motion for Evidence Sanctions due to Defendant's "failure to meet and confer in good faith in compliance with Local Civil Rules 37-1." (ROA No. 38.)

d.  On **July 23, 2021**, Plaintiff filed a Motion for Order Approval of Notice. [Notice of Motion and Motion for Order for Approval of Notice to the Potential Members of a Collective Action Under 29 U.S.C. § 216(B)] (ROA No. 94.)  At the time the motion was filed, Plaintiff had 34 Opt-in plaintiffs and 12 declarations from putative class members.  Defendants filed an Opposition (ROA No. 118), Plaintiffs filed a Reply (ROA No. 133.)  On **August 16, 2021**, the court took the Motion Under Submission (ROA No. 147.)  The hearing date for the motion was set for August 20, 2021, which the Court took under submission.  At the time the Proposed Settlement was reached, Plaintiffs had 92 Opt-in plaintiffs.

e.  On **July 23, 2021**, Defendant filed a Motion for Protective Order. [Motion for Protective Order and Remedial Relief] (ROA

8

No. 96.)  On **July 29, 2021**, the Court denied the motion as Moot. (ROA No. 107.)

f.    On **August 13, 2021**, Defendant filed a Motion for Summary Judgement. [Notice of Motion and Motion for Summary Judgment] (ROA No. 146.) Plaintiffs filed an Opposition (ROA No. 188), Defendant filed a Reply (ROA No. 191.) On **September 27, 2021**, the court took the Motion Under Submission (ROA No. 208.)  By the time the parties reached their settlement, the Court had not decided the motion.

g.    On **August 17, 2021**, Plaintiffs filed a Motion to Certify Class. [Notice of Motion and Motion to Certify Class] (ROA No. 153.) Defendant filed an Opposition (ROA No. 186), Plaintiffs filed a Reply (ROA No. 189.) On **September 21, 2021**, the court took the Motion Under Submission. As of the date the parties reached their settlement, the Court had not decided the motion.  Here, the class encompasses a total of approximately 2,242 forty years of age or older applicants who unsuccessfully applied to one of Defendant's California stores for a front-of-the-house non-managerial job from December 4, 2015, to the date of preliminary approval

h.    On **August 20, 2021**, Defendants filed a Motion to Exclude Ted Tatos Expert Report. [Notice of Motion and Motion to Exclude Ted Tatos Expert Report and Opinions] (ROA No. 161.) Plaintiffs filed an Opposition (ROA No. 185), Defendants filed a Reply (ROA No. 190.)  On **September 21, 2021**, the court took the Motion Under Submission (ROA No. 196.)  The Court did

9

not make a ruling by the time the parties reached the Proposed Settlement.

45.    On **July 12, 2021**, Plaintiffs disclosed to Defendant their Initial Expert Witness Disclosures, which designated economist and statistician Ted Tatos as Plaintiffs' expert for this matter.  Plaintiffs provided Mr. Tatos with an array of data Plaintiffs obtained from Defendant through discovery.  This included, without limitation, databases of Defendant's California front-of-house employees listing their names, contact information, and birth dates; databases containing Defendant's front-of-house employees' earnings; databases listing Defendant's employees' information of those hired and terminated by Defendant; databases containing information about job applicants for Defendant's front-of-house positions; and Defendant's Expert Report from Dr. Ali Saad.  Upon review and further analysis of the provided information, Mr. Tatos produced his Expert Report, which was also provided to Defendants on July 12, 2021.

46.    Based on his findings, Mr. Tatos concluded that Defendant's applicants who were 40 years or older were significantly less likely to receive an offer of employment for Defendant's front-of-house positions in California, as compared to applications under 40 years old.  In other words, he found that age-protected applicants were denied employment with Defendant at a "statistically significant" higher rate than those under the age of 40.  Further, Mr. Tatos concluded by analyzing the earnings database provided to him that the California Class members suffered approximately $4.9 million in monetary damages, and those outside California class members statement approximately $1.9 million in monetary damages.

47.    On **August 17, 2021**, Plaintiffs provided Defendant with a Second Expert Report of Ted Tatos.  Plaintiff provided the second report to fix the discrepancies acknowledged by Defendant's Expert Report from Dr. Ali Saad,

specifically concerning the candidates' mismatched birth date data.  In doing so, Mr. Tatos used the same data and information analyzed by Defendant's expert,  and the same methodology used in his first expert report but removed the contested mismatched data from his analysis.  Nevertheless, Mr. Tatos' Second Expert Report still concluded a "statistically and economically significant" disparity against Defendant's front-of-house applicants 40 years or older as compared to applicants under 40 years old.  As such, based on Mr. Tatos' analysis of Defendants' front-of-house employees' earnings data, Mr. Tatos estimated that if the Class were to win on all of their claims, the total class damages for the entire class period would be $5,213,895 in economic damages, including prejudgment interest.

48.     Overall, Plaintiffs' counsel have had to spend in excess of $100,000 in expert fees alone, including those from Ted Tatos, to further investigate Plaintiffs' claims.

## THE PARTIES' SETTLEMENT ATTEMPTS

49.     The parties agreed to mediate with Ann Kotlarski on **March 9, 2021**. Due to Defendant not providing sufficient information, Plaintiffs were forced to postpone it.  The parties eventually mediated on **August 26, 2021**, with Ms. Kotlarski, but were unable to reach a resolution.

50.     On **September 27, 2021**, the parties mediated with John Adler.  The case did not settle at the September 27, 2021 mediation.  On **September 28, 2021**, the mediator sent out a mediator's proposal outlining material settlement terms.

51.     On **September 29, 2021**, the parties were notified by the mediator that both parties had accepted it.  Over the following months, the parties then worked towards and finalized the settlement agreement.

52.     The action remained adversarial throughout both mediations and all through the litigation.

53.     The members potentially could have reached a more favorable result at trial.  Based on the constant changes in this complex area of the law, however, any potential more favorable verdict would inevitably be appealed, and that would mean either long delays or a potential retrial.  Collectability of any judgment was an important consideration.  Nevertheless, no matter the outcome, the order or judgment would have been appealed in this matter.  In Class counsel's experience, this would have delayed the action for another two years at a minimum before the Class would be compensated.  Entering into a settlement now would mean a positive outcome with immediate cash payments to the putative class members.

## RELEVANT EXPERIENCE

54.     I was admitted to the California State Bar in 2004.  Since 2007, I have specialized in employment class actions.  I have litigated, certified, and settled numerous employment class actions.  I and Mr. Belong have also tried class action lawsuits and litigated the appeal of judgments through the Fourth District Court of Appeals in class action trials.  In 2016, my partner, Tyler Belong, and I engaged in a 10-week bench and jury trial and received a jury verdict of $2,000,000.00 in a wage and hour class-action lawsuit against Apple, Inc. (Case No.: 37-2011-00102593-CU-OE-CTL.)

55.     About seventy-five percent of my area of practice is in the area of employment class actions.  The balance of my practice consists of a mix of wrongful termination and FEHA employment actions.  Excluding the instant matter, my firm is currently litigating several other employment class actions against large companies on behalf of an aggregate of tens of thousands of employees.

56.     I, and my partner, Mr. Belong,  have considerable experience in litigating large employment class actions.  I formed what is now Hogue & Belong

in 2006, and since that time have been regularly litigating employment class actions.

57.     Since forming my firm, I and members of my firm, including Mr. Belong, have been consistently appointed Class counsel in numerous cases.  I, nor anyone from my firm, has ever been deemed inadequate as Class counsel.

58.     Further, throughout this litigation, I have not become aware of any other similar class actions against Defendant; thus, there is no risk of a reverse auction.  Nevertheless, given the experience that I, Mr. Belong, and our firm have in employment class actions, we endorse the Proposed Settlement.


I declare under penalty of perjury under the laws of the United States and of California that the foregoing is true and correct.


Executed this 19 day of November 19, 2021, in San Diego, California.

_____*s/ Jeffery L. Hogue*_____
Jeffery L. Hogue

DECLARATION OF JEFFREY L. HOGUE IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL COLLECTIVE AND CLASS SETTLEMENT

Exhibit "A"

1 | Jeffrey L. Hogue (SBN 234557)
2 | *jhogue@hoguebelonglaw.com*
  | Tyler J. Belong (SBN 234543)
3 | *tbelong@hoguebelonglaw.com*
  | Mark A. Simpliciano (SBN 331516)
4 | *msimpliciano@hoguebelonglaw.com*
  | **HOGUE & BELONG**
5 | 170 Laurel Street
  | San Diego, CA 92101
6 | Tel:   (619) 238-4720
7 | Fax:   (619) 238-5260

8 | Attorneys for Plaintiffs

9 | Mia Farber (SBN 131467)
  | *mia.farber@jacksonlewis.com*
10 | Buck Haddix (SBN 295334)
   | buck.haddix@jacksonlewis.com
11 |
   | **JACKSON LEWIS P.C.**
12 | 725 South Figueroa Street, Suite 2500
   | Los Angeles, California 90017-5408
13 | Telephone:   (213) 689-0404
   | Facsimile:    (213) 689-0430
14 |
15 | Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHY SYPHERD, individually, PATRICIA BRUMMETT, individually, and KIMBERLY WATT, individually, and on behalf of all others similarly situated, | **CASE NO.:  5:20-CV-00921-FLA(KK)** |
| | *[Assigned to District Judge Fernando L. Aenlle-Rocha and Magistrate Judge Kenly Kiya Kato]* |
| Plaintiffs, | |
| vs. | **COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE** |
| LAZY DOG RESTAURANTS, LLC, a California Corporation; and DOES 1-50, | |
| Defendants. | Complaint Filed:  May 1, 2020 FAC Filed:       June 15, 2020 |

---

1   COLLECTIVE AND CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Subject to approval by the United States District Court for the Central District of California, this Collective and Class Action Settlement Agreement sets forth the full and final terms by which Defendant Lazy Dog Restaurants ("Lazy Dog") and the Named Plaintiffs, Cathy Sypherd, Patricia Brummett and Kimberly Watt ("Plaintiffs"), on behalf of themselves and the California Class and Settlement Collective as defined below (collectively, "Covered Individuals"), have settled and resolved all claims that have been raised in the Litigation, defined below.

## **RECITALS**

WHEREAS, an amended collective and class action Complaint ("Complaint") was filed on June 15, 2020 alleging violations of the federal Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12900, *et seq.*("FEHA") and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), including both disparate treatment (intentional discrimination) and disparate impact theories, for alleged failure or refusal to hire qualified workers over 40 years old and older into Covered Positions;

WHEREAS, Lazy Dog denied and continues to deny all the allegations and has denied and continues to deny it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted. Nonetheless, without admitting or conceding any liability or damages, the Parties have agreed to settle the lawsuit on the terms and conditions set forth herein to avoid the burden and expense of continuing litigation;

WHEREAS, the Parties engaged in substantial discovery, including party depositions, percipient and expert witness depositions, and exchange of documents, data, and analyses;

WHEREAS, the Parties attended (1) mediation on August 26, 2021 with Ann Kotlarski of Judicate West, an experienced mediator with particular expertise regarding employment discrimination and complex litigation, including class actions, and (2) a second mediation on September 27, 2021 with John Adler of Judicate West, an experienced

mediator with particular expertise regarding employment discrimination and complex litigation, including class actions;

WHEREAS, pursuant to a mediator's proposal by Mr. Adler delineating key terms, the Parties reached a Settlement in principle on September 29, 2021;

WHEREAS, the Parties recognize that, in the absence of an approved Settlement, they would face a long course of litigation, including further extensive, costly and time-consuming discovery, extensive motion practice, trial and potential appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties;

WHEREAS, the Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, through settlement pursuant to the terms and conditions set forth herein;

WHEREAS, based on their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in no recovery or a recovery that is less favorable to the Plaintiffs, counsel for Plaintiffs is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Covered Individuals;

WHEREAS, the Named Plaintiffs, defined below, believe the Settlement set forth herein serves the best interests of the California Class and the Settlement Collective based on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification, as it provides prompt relief for the Covered Individuals;

WHEREAS, it is the desire of the Parties to fully, finally and forever settle, compromise and discharge all disputes and claims arising from or related to the Litigation which exist between them and between the Named Plaintiffs, the California Class, the Settlement Collective, and the Released Parties;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, as well as the good and valuable consideration provided for herein, the Parties

agree to a full and complete settlement of the Litigation on the following terms and conditions ("Settlement"):

## 1. DEFINITIONS

The following terms shall have the meanings defined in this Section, wherever used in this Agreement, and in all its exhibits:

1.1 **Agreement.** "Agreement" means this settlement agreement and all exhibits attached to it.

1.2 **CAFA Notice.** "CAFA Notice" means the notice required pursuant to 28 U.S.C. § 1715(b).

1.3 **California Class.** "California Class" means all applicants who, between December 4, 2015 to Preliminary Approval or March 17, 2022 (whichever is earlier) (inclusive), (a) applied for and were denied a Covered Position in California, or (b) resided in California at the time they applied to a Covered Position and were denied; and were aged 40 or older at the time of application.

1.4 **California Class Fund.** "California Class Payment" shall be the Distribution Fund multiplied by the percentage of the California Class (numerator) vis-à-vis the Settlement Collective Members (denominator).

1.5 **Claimants.** "Claimants" means any and all Covered Individuals who do not properly opt-out of the Settlement (*see* § 8.3).

1.6 **Claims Period.** The period of forty-five (45) calendar days for Covered Individuals to submit Claim Forms, object and/or opt out. This period will begin to run on the date of the initial Notice mailing.

1.7 **Class Counsel.** "Class Counsel" means the law firm of Hogue & Belong, APC in its capacity representing the California Class and Settlement Collective.

1.8 **Court.** "Court" means the Court having jurisdiction over this Litigation, at any stage (currently the United States District Court for the Central District of California).

1.9 **Covered Individuals.** "Covered Individuals" means, collectively, "Named Plaintiffs," the "California Class" and "the Settlement Collective Members."

1.10 **Covered Period.** The "Covered Period" means (1) December 4, 2016 to Preliminary Approval or March 17, 2022 (whichever is earlier) for the Settlement Collective; and (2) December 4, 2015 to Preliminary Approval or March 17, 2022 (whichever is earlier) for the California Class.

1.11 **Covered Position.** A "Covered Position" means non-managerial front of the house positions, including hosts, servers, bartenders, bussers, runners and take-out.

1.12 **Claim Form.** "Claim Form" means the form that California Class members must complete and submit to (i) provide their social security number for tax reporting purposes and (ii) certify that when they applied for employment with Lazy Dog they were age 40 or older, substantially in the form attached hereto as Exhibit 2, and as approved by the Court.

1.13 **Defendant** or **Lazy Dog.** "Defendant" or "Lazy Dog" means Lazy Dog Restaurants, LLC.

1.14 **Defendant's Counsel.** "Defendant's Counsel" means the law firm of Jackson Lewis P.C.

1.15 **Distribution Fund.** "Distribution Fund" is defined as the Gross Fund minus court-approved Class Counsel's attorneys' fees, costs and expenses (*see* §§ 3.2.3, 4); Named Plaintiff Service Awards (*see* §§ 3.2.1, 5); the fees and expenses of the Settlement Administrator (*see* §

3.2.2);  Lazy Dog's share of any applicable federal, state and local payroll takes (including FICA, FUTA and SUTA) (*see* §§ 3.2.6); and the Reserve Fund (§§ 3.2.5, 9).   The Distribution Fund shall be distributed to Claimants *pro rata* as set forth in section 3.3.

1.16 **Final Approval Hearing.**   "Final Approval Hearing" means the hearing during which the Court shall decide whether to finally approve the Agreement and make such other rulings as are contemplated by this Agreement or as modified by any subsequent mutual agreement of the Parties in writing and approved by the Court.

1.17 **Final Approval Order.** "Final Approval Order" means the final order entered by the Court after the Final Approval Hearing.

1.18 **Finality.** "Finality" means the first court day after the date on which the Court has entered the Final Approval Order, provided that no timely objection has been made or that all timely objections have been resolved or withdrawn, thus triggering the appeal waiver in section 8.4.8. If an objection to the Settlement is timely filed and has not been resolved or withdrawn by the date on which the Court has entered the Final Approval Order, Finality shall be the date on which the deadline for taking an appeal has passed, or, if there is an appeal of the Court's Final Approval Order, the day after all appeals are fully and finally resolved in favor of final approval of the Agreement.

1.19 **Gross Fund.** The "Gross Fund" means the common settlement fund account in the sum of Two Million One Hundred Fifty Thousand Dollars  And Zero Cents ($2,150,000.00) that is established by the Settlement Administrator and shall be used to pay all Settlement payments to Claimants and Lazy Dog's share of any federal, state and local payroll taxes (including FICA, FUTA and SUTA) with respect to all Settlement payments to these individuals treated as wages for tax

purposes; all Service Award(s); Class Counsel's attorneys' fees, costs and expenses; and the fees and expenses of the Settlement Administrator.   Other than the limited circumstance described in section 3.10, there shall be no reversion of any monies from the Gross Fund to Lazy Dog under any circumstances.  Under no circumstances shall Lazy Dog be responsible for paying more than $2,150,000.00 in the Settlement of this Litigation.

1.20   **Litigation.**  "Litigation" means the action pending in the United States District Court for the Central District of California Case No. 5:20-CV-00921-FLA, on behalf of Named Plaintiffs and the allegations and claims made therein.

1.21   **Named Plaintiffs.**  "Named Plaintiffs" means Cathy Sypherd, Patricia Brummett and Kimberly Watt.  For purposes of this Settlement only, the Settlement Administrator will deem Named Plaintiffs as both California Class Members and Settlement Collective Members, regardless of whether they would be deemed class members or collective members in litigation.

1.22   **Named Plaintiff Service Award(s).**  "Named Plaintiff Service Award" means the additional amounts paid to the Named Plaintiffs, determined by the Court, for their service in this Litigation (*see* § 5.1).

1.23   **Notice.**  "Notice" means the Notice of Collective and Class Action Settlement, substantially in the form attached hereto as Exhibit 1, and as approved by the Court.

1.24   **Opt-Ins**. "Opt-In" or "Opt-Ins" refers to the following ninety (92) individuals:  Edith Catalano; Jenny Armendariz; Joe DiTrapani; Karen McClure; Mary Borgognone; Rachel Robinson; Wendy Garrod; Linda Goodman; Brandon Cosenza; Christopher Sobolewski; Kimberly Tucci; Camille Bruce-Dozier; Brenda Davis; Luis Torres; Rose

Chadwick; Matthew Armbruster; Robert Kenner; Ryan Wolovnik; Brian Scanlan; Jimmy Meneses; Jeremy Sullivan; Michele Carpeneti; Silvina Gonzalez; Gabriel Alejandro Martinez Sanchez; Suzy Shi; Kevin Cox; Danielle Giannini; Faramarz Moradeslami; Mary-Pat Mack; Josh Parsons; Christy Dunn; James Tomlinson; Roberto Sanchez; Erin McDowell; Laura Lendennie; Elizabeth Bradford; Carlos Meneses; Andrew Christenson; David Rosa; Franco Vessia; Jeanette Erwin; Kimberly Heintz; Carol Brenenstahl; Charles Sturrock; James Hopper; Rene Quiroz; Karen Cross; Gilbert Atilano; Margarita Castillo; Gema Jimenez; Curtis Bustamente; Tracie Bachman; Erik Wilson; Jennifer Stubbs; Rebecca Van Sickle; Theresa Ayers; Veronica Beels; Samantha Hundermark; Gabriel Frias; Valerie Cimbura; Jeff Clark; Judy Crowhurst; Theresa Moore; Lorie Kerns; Carmelita Morehouse; Christopher Salem; Amelia Elenna-Hernandez; Sophia Nicholas; Jonathan Huggins; Erica Miyagishima; Rosa Plascencia; Tammy Dailey; Charlotte Curtis; Edward Frederick; Yadira Hunt; Rosanne Geborkoff; Kristine Morillas; Jaime May; Nancy Roybal; Sunday Thompson; Tammy Rievley; Gina Morris; Linda Rodriguez; Sherry Olsen; Tracy Duran; Robert Sedani; Oscar Apodaca; Dave Schomaker; Peggy Lazzarini; Stephanie Campbell, Shima Jackson, and Christina Palmieri.

1.25    **Participating Class and Participating Collective Members.** "Participating Class" and "Participating Collective Members" means all individuals in the California Class and Settlement Collective, as approved by the Court, who do not elect exclusion and do not timely opt out of the monetary relief provisions of the Settlement pursuant to the terms and conditions for exclusion set forth in the Settlement Agreement and Notice.

1.26  **Parties.**  "Parties" means the Plaintiffs in this action and Defendant Lazy Dog Restaurants, LLC.   "Party" means either Plaintiffs or Defendant Lazy Dog Restaurants, LLC.

1.27  **Preliminary Approval Order.**  "Preliminary Approval Order" means the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing Notice, and the time period for, and the manner of, opt-outs and objections.

1.28  **Qualified Settlement Fund or QSF.**  "Qualified Settlement Fund" or "QSF" means "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The Court's preliminary approval of this Settlement will constitute valid authority to establish and maintain the QSF.

1.29  **Released Parties.**  "Released Parties" means Lazy Dog Restaurants, LLC and its member firms, their past and present direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors and assigns, and their past and present partners, principals, employees, officers, attorneys, insurers, reinsurers, representatives and agents, whether acting as agents or their respective administrators, fiduciaries, trustees and insurers and reinsurers, whether acting as agents or in individual capacities, and this Agreement shall inure to the benefit of and shall be binding upon and enforceable by all such entities and individuals.

1.30  **Reserve Claims.**  "Reserve Claims" means claims made by Claimants, if any, pursuant to the process set forth in section 9, below.

1.31  **Reserve Fund.**  "Reserve Fund" means the $55,000 fund set aside from the Gross Settlement Amount to pay post-Finality "Reserve Claims" during the "Reserve Period."

1.32 **Reserve Period.** "Reserve Period" means the 15-month period beginning at Finality as described in section 9.1.

1.33 **Settlement Administrator.** The "Settlement Administrator" means the entity selected by Class Counsel subject to Lazy Dog's approval to administer the Settlement through a competitive bidding process. CPT Group has been selected as the Settlement Administrator.

1.34 **Settlement Collective.** "Settlement Collective" or "Settlement Collective Members" means all the applicants (a) who applied to and were denied Covered Positions on or after December 4, 2016, (b) who were aged 40 or older at the time of application, and (c) who opt(ed) into this Litigation pursuant to the federal Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA") on or before October 8, 2021.

1.35 **Settlement Collective Fund**. The "Settlement Collective Fund" shall be the Distribution Fund less the California Payment Fund.

## 2. GENERAL TERMS

2.1 **Full resolution.** It is the desire of the Parties to fully, finally and forever settle, compromise and discharge all disputes arising from or related to the Litigation, which exist between them, and between the Released Parties and the Covered Individuals.

2.2 **Complete settlement and release.** It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims, as defined in section 11.1, against all Released Parties and a dismissal of all pending actions covered by the Released Claims.

2.3 **Denials.** Lazy Dog denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class and collective allegations asserted in the Litigation. Lazy Dog has agreed to resolve the Litigation via this Agreement, but to the extent this

Agreement is deemed void or Finality does not occur, Lazy Dog does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Plaintiffs in the Litigation upon all procedural and substantive grounds, including without limitation the ability to challenge class or collective action treatment on any grounds and to assert any and all other potential defenses, privileges, or arbitration rights.  Plaintiffs and Class Counsel agree that Lazy Dog retains and reserves these rights, and they agree not to take a position to the contrary.   Specifically, Plaintiffs and Class Counsel agree that, if the Litigation were to proceed, they shall not argue or present any argument that Lazy Dog should be barred from contesting class action certification pursuant to Federal Rule of Civil Procedure 23 on any grounds relating to this Agreement, pursuing decertification of the conditionally certified ADEA collective action, or asserting any and all other potential defenses and privileges.  Plaintiffs and Class Counsel hereby waive any such argument, including any argument based on this Settlement or this Agreement or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this Settlement or this Agreement.  This Agreement shall not be deemed an admission by, or a basis for estoppel against, Lazy Dog that class action treatment pursuant to Federal Rule of Civil Procedure 23 or certification of the ADEA collective action pursuant to 29 U.S.C. § 216(b) is proper or cannot be contested on any grounds.  Additionally, neither the Agreement nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the Settlement:  (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal, or

administrative proceeding in any court, administrative agency, or other tribunal.

2.4 **Release.** Upon Finality, Participating Class and Participating Collective Members shall release the claims actually pled in the operative Complaint and those that could have been raised based on the allegations in the operative Complaint. (*See* § 11.) Named Plaintiffs shall sign a general release of claims against the Released Parties, in the form attached hereto as Exhibit 3 ("General Release").

2.5 **Not evidence.** Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Settlement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

2.6 **Cooperation.** The Parties agree to cooperate and shall aim to effectuate and implement all terms and conditions of this Agreement and to obtain the Court's approval of this Agreement and all of its terms. All the Parties, upon the request of any other, agrees to perform such further acts and to execute and deliver such other documents, data and information as are reasonably necessary to carry out the provisions of this Agreement.

3. **MONETARY RELIEF**

3.1 **Gross Fund Payment.** Within ten (10) business days after Finality, Lazy Dog shall wire the Gross Fund amount of Two Million One Hundred Thousand Fifty Dollars and Zero Cents ($2,150,000.00) to the Settlement Administrator to fund the common Qualified Settlement Fund ("QSF").

3.2 **Gross Fund Allocation.** The Gross Fund shall be allocated as follows:

3.2.1 The Named Plaintiff Service Awards as described in section 5.1 and as approved by the Court.

3.2.2  The fees and costs of the Settlement Administrator, estimated to be Seventeen Thousand Dollars and Zero Cents ($17,000.00).

3.2.3  Attorneys' fees and costs as described in section 4 and as approved by the Court.

3.2.5  The Reserve Fund as described in section 9.

3.2.6  Lazy Dog's share of any federal, state and local payroll taxes (including FICA, FUTA and SUTA) with respect to any payments to Claimants pursuant to this Settlement that are treated as wages for tax purposes.

3.2.7  The Distribution Fund to be allocated among the Claimants according to the plan of allocation for individual monetary awards set forth in section 3.3 and distributed as set forth herein and pursuant to orders of the Court.

3.3    **Individual Monetary Awards**.  The Distribution Fund will be separated into a California Class Fund and a Settlement Collective Fund and will be distributed to Covered Individuals who qualify for each respective fund *pro rata* (equally regardless of number of applications or any other factor) which shall be calculated as follows:

3.3.1  **California Class Members**.  Payment to the California Class members will be paid on a *pro rata* basis from the California Class Fund.  Eligible California Class members must submit a timely and valid Claim Form (Exhibit 2, attached hereto) in order to be eligible for a *pro rata* payment from the California Class Fund.

3.3.2  **Settlement Collective Members**.   Payment to the Settlement Collective Members shall be on a *pro rata* basis from the Settlement Collective Fund. Settlement Collective Members must submit a timely and valid Claim Form (Exhibit 2) in order to be eligible for a *pro rata* payment from the Settlement Collective Fund. In order for Settlement

Collective Members to receive a second payment on a *pro rata* basis from the California Class Fund, Settlement Collective Members must also be a California Class member as defined in section 1.3 of this Agreement.   Covered Individuals who are both California Class members and Settlement Collective Members will receive one (1) payment on a *pro rata* basis from the California Class Fund and one (1) payment on a *pro rata* basis from the Settlement Collective Fund, provided they submit a timely valid Claim Form and do not request exclusion.

3.3.3 **Lazy Dog to Provide Information.**  Within fifteen (15) business days after the date of the Preliminary Approval Order, Lazy Dog shall provide to the Settlement Administrator the same fields of applicant data previously produced to Class Counsel in the Litigation, updated to include all Covered Individuals, in the format previously produced to Class Counsel in the Litigation, with incorporation of (i) applicant data from paper applications from December 4, 2016 through January 1, 2017, in the case of the Settlement Collective, and from December 4, 2015 through December 31, 2016, in the case of the California class as agreed upon by the Parties; and (ii) the class lists relied upon in the Litigation by the Parties' respective experts (Ted Tatos for Plaintiffs, and Ali Saad, Ph.D. for Defendant).  The Settlement Administrator shall maintain this data in the strictest confidence and shall not disclose it to anyone except Class Counsel, who shall remain bound by the Protective Order entered by the Court in this Action (ECF Document 33), and Defense Counsel, unless otherwise agreed by the Parties.

3.3.4 **Verification of Date of Birth Information.**  Class Members must sign the Claim Form which verifies that they were 40 years of age or older when they applied to Lazy Dog during the specified time period.  A

Claim Form will be deemed deficient if it does not include the Claimant's social security number and is not signed and dated by the Claimant and returned by the deadline provided in the Notice.  If any Claim Form received by the Settlement Administrator is incomplete or deficient, the Settlement Administrator shall send a letter informing the Participating Class and/or Collective Member of the deficiency and allow ten (10) days to cure the deficiency.  If after the cure period or claims period, whichever is later, the Claim Form is not cured, Participating Class Member will still be bound by the terms of the Release.  A Participating Class and/or Collective Member who returns a Claim Form with his or her social security number and signature but does not otherwise cure an incomplete or deficient Claim Form will still be entitled to participate in the settlement and receive a settlement payment.

3.4 **Distribution of Monetary Awards.**  The Settlement Administrator shall distribute the individual monetary awards as set forth herein and pursuant to the orders of the Court.

3.5 **Payroll Taxes.**  The Settlement Administrator shall calculate Lazy Dog's share of any federal, state and local payroll taxes (including FICA, FUTA and SUTA) attributable to any payments to Claimants treated as wages pursuant to section 6.5.  The Settlement Administrator shall be responsible for remitting those taxes to the appropriate taxing authorities from the Gross Fund and filing the required tax returns.  The Settlement Administrator shall calculate each Claimant's share of any federal, state and local payroll taxes attributable to any monetary payments treated as wages pursuant to section 6.5.  The Settlement Administrator shall be responsible for withholding those amounts from the monetary payments and remitting those taxes to the appropriate

taxing authorities, filing the required tax returns and issuing the required tax forms to the Claimants.

3.6  **Remainder.**  Any remainder not claimed by six months (or 180 days) after the last reissued check (the "First Residue") shall be held aside to be distributed as described in section 9.4.  No amount shall revert to Lazy Dog.

3.7  **Control of the Gross Fund.**  The Gross Fund shall be controlled by the Settlement Administrator subject to the terms of this Agreement and any orders of the Court.  Interest earned on the Gross Fund, if any, shall derive from interest earned on uncashed checks, if any, and may be retained by the Settlement Administrator to cover the cost of administering the resolution of those uncashed checks.

3.8  **Common Fund.**  The Gross Fund shall constitute a "common fund."  Upon the Settlement Administrator opening this account, Lazy Dog shall execute an election statement provided by the Settlement Administrator, which shall be affixed to the initial tax return of the Gross Fund in order to establish the start date of the Gross Fund.  The Gross Fund shall be created, managed and distributed by the Settlement Administrator subject to the terms of this Agreement and any orders of the Court.  The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Gross Fund.

3.9  **Tax Allocation.**  The Settlement Administrator shall allocate thirty percent (30%) of each Claimant's monetary award to wages (reported on IRS Form W-2) and seventy percent (70%) to non-wage compensation for liquidated damages and/or emotional distress or interest (reported on IRS Form 1099).

3.10  **Return of Gross Fund if Settlement is Voided.**  The Settlement Administrator shall have the obligation to return to Lazy Dog the entire then-remaining Gross Fund within seven (7) business days in the event that this Agreement is rendered null and void as set forth in this Agreement.  Any fees

and costs incurred by the Settlement Administrator to that point will be shared equally between Lazy Dog and Plaintiffs.

## 4.    ATTORNEYS' FEES AND COSTS

4.1    At least ten (10) business days before the end of the Claims Period, Class Counsel shall petition the Court for an award of attorneys' fees not to exceed 30% of the Gross Fund, or Six Hundred Forty Five Thousand Dollars ($645,000) and reimbursement of actual costs not to exceed One Hundred Seventy Five Thousand Dollars ($175,000) that shall fully compensate Class Counsel for the attorneys' fees and litigation costs incurred at any time in connection with the Litigation.  Should the Court award a lesser amount of fees or costs, the difference between this amount and the amount awarded for fees and costs shall be added to the Gross Fund.

4.2    Lazy Dog agrees that Plaintiffs and Class Counsel are entitled to an award of reasonable attorneys' fees and costs in the Litigation and shall not oppose Class Counsel's fees and costs request subject to section 4.1.  The Parties agree that the full amount of the attorneys' fees and costs awarded in this action shall be paid from the Gross Fund.

4.3    The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.

4.4    Payment of Class Counsel's attorneys' fees and costs approved by the Court shall be made from the Gross Fund within twenty (20) days after entry of the Final Approval Order.

## 5.    SERVICE AWARDS

5.1    **Service award request.**  At least ten (10) business days before the end of the Claims Period, Class Counsel shall apply to the Court to receive no more than the following amounts as Service Awards:  Ten Thousand Dollars ($10,000) for each Plaintiff.

5.2 **Lazy Dog's position.** Lazy Dog shall not oppose the Court-approved Service Awards up to the above-listed amounts, which shall be deducted from the Gross Fund.

5.3 **Separate from Distribution Fund awards.** The Service Awards are in addition to the Named Plaintiffs' recovery from the Distribution Fund.

5.4 **Significance of ruling.** The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.

6. **DISTRIBUTION OF INDIVIDUAL MONETARY AWARDS**

6.1 **Settlement Checks.** The Settlement Administrator shall mail all individual monetary awards to Claimants no later than twenty (20) business days after Finality. The mailing shall clearly explain that the checks will expire in 180 days.

6.2 **Efforts to encourage Claimants to cash checks.** The Settlement Administrator shall, in conjunction with Class Counsel, undertake reasonable efforts to encourage Claimants to cash their settlement award checks, including reissuance of checks and renewed attempts to locate and contact Claimants who have not cashed their checks.

6.3 **Uncashed Checks and Unused Funds.** The aggregate value of uncashed checks for all Claimants after all settlement checks are cashed or become stale shall constitute the "First Residue" to be held for redistribution as set forth in section 9.4.

6.4 **Final Report by Settlement Administrator.** Within one month after all disbursements of money required by the Settlement Agreement have been made, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a declaration providing a final report on the disbursements of all funds.

6.5 **Taxability of Settlement Payments**

6.5.1 For tax purposes: 30% of payments to Claimants pursuant to section 3.3.1 and 3.3.2 shall be treated as wage payments (reported on IRS Form W-2) and 70% of such payments shall be treated as non-wage income as compensatory or liquidated damages/non-wage damages and interest (reported as non-wage income on IRS Form 1099).

6.5.2 Payments treated as W-2 wages pursuant to sections 3.9 and 6.5.1 shall be made net of all applicable payroll taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax and shall be reported to the Internal Revenue Service ("IRS"), and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as compensatory or liquidated damages/non-wage damages and interest pursuant to sections 3.9 and 6.5.1 shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Any Service Awards made pursuant to section 5 shall be made without withholding and reported to the IRS under the payee's name and social security number on an IRS Form 1099.

6.5.3 If it is subsequently determined by a tax authority that any Claimant owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the payment recipient and the tax authorities, and that neither Class Counsel, the Released Parties nor Defendant's Counsel shall be responsible for the payment of such taxes, including any interest

and penalties.  Further, neither Lazy Dog, Defendant's Counsel nor Class Counsel is providing tax advice to Claimants, and neither makes any representations regarding the tax characterization of any Settlement payments or any tax obligations of, or tax consequences to, any Claimant.

## 7.    FORM OF NOTICE AND CLAIM FORM

7.1    **Notice and Date of Claim Form information.**  All Covered Individuals shall receive a Notice substantially in the form set forth in Exhibit 1 and a Claim Form substantially in the form set forth in Exhibit 2, each attached hereto. The Notice documents shall be tailored to each individual and have pre-printed information to the extent practicable.

7.2    **Mail transmission.**  The Notice and Claim Form shall be delivered as set forth in section 8.2 of this Agreement.

## 8.    ADMINISTRATION OF SETTLEMENT

8.1    **Settlement Administrator's Duties**

8.1.1    **List of duties.**  The Settlement Administrator shall:

(1)    provide notice of the proposed Settlement to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. section 1715(b), no later than ten (10) calendar days after the Court's Preliminary Approval Order of the Settlement; draft and prepare the CAFA notice in conformity with 28 U.S.C. section 1715, and subject to Lazy Dog's approval.  The Settlement Administrator shall provide a draft of the CAFA Notice to Lazy Dog no later than three (3) calendar days after the Court's Preliminary Approval Order of the Settlement.

(2)    mail and e-mail the Notice and Claim Forms to the Covered Individuals after performing age and address checks required by sections 3.3.3 and 8.2.5;

(3)    respond to questions from the Covered Individuals;

(4)    distribute individual monetary awards to Claimants;

(5)    enable the Covered Individuals to review the Notice and submit Claim Forms via mail and email; and provide a toll-free number for communicating with the Settlement Administrator;

(6)    no later than twenty (20) days after the Court's entry of the Final Approval Order, distribute Service Awards to Named Plaintiffs;

(7)    no later than twenty (20) days after the Court's entry of the Final Approval Order, distribute amounts approved by the Court as Attorneys' Fees and Incurred Costs to Class Counsel;

(8)    no later than fifteen (15) business days after Lazy Dog funds the Gross Fund, place in escrow all other amounts transmitted by Lazy Dog;

(9)    determine Lazy Dog's share of taxes owed in respect to any payments to Claimants and remit them to the taxing authorities, file required federal, state, or local tax returns, as required, and take all other actions required by section 3.2.6;

(10)   determine each Claimant's share of taxes owed in respect to any payments made, and take all applicable actions with respect to those taxes as set forth in section 3.2.6;

(11)   distribute funds to the *cy pres* recipients;

(12)  perform any other duties set forth in this Agreement; and

(13)  perform any other duties reasonably appropriate to carry out its responsibilities described in this Agreement and/or ordered by the Court.

8.1.2  **Cooperation.**  The Parties agree to cooperate with the Settlement Administrator and assist it in administering the Agreement, including working with the Settlement Administrator in making all reasonable efforts to ensure efficiency, minimize the costs and expenses, and promote effective administration.

8.1.3  **Cost limits.**  The Settlement Administrator shall not incur any costs and expenses above those explicitly agreed to by the Parties in writing without prior approval of the Parties.

8.1.4  **Updates.**  Upon reasonable request by either counsel, and on its own initiative at regular intervals, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a statement detailing its implementation activities and costs of administration.  Class Counsel shall file such information with the Court at appropriate times, including before and after the Final Approval Hearing.

8.2  **Notice and Claim Form Procedures**

8.2.1  **Notice mailing and emailing.**  Within twenty-one (21) business days after receipt of the applicant data, the Settlement Administrator will (1) mail the Notice and Claim Form, as approved by the Court, to the Covered Individuals, by first class mail, postage prepaid, and (2) email copies to those for whom an email address is available.  The Parties intend to provide actual notice to each Covered Individual, to the extent practicable.

8.2.2 **Reminders.**  The Settlement Administrator shall send reminder notices via mail or emails to the Covered Individuals who have not responded to the Notice approximately fifteen (15) days before the end of the Claims Period.

8.2.3 **De-duplication and NCOA database.**  To provide the best notice practicable, the Settlement Administrator shall (a) de-duplicate the list of Covered Individuals and (b) run the list through the United States Postal Service's National Change of Address database and update its list of their contact information based on the results, before mailing the Notice.

8.2.4 **Returned mail.**  If Notices are returned to the Settlement Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender," the Settlement Administrator shall perform a standard skip trace up to two (2) times in an effort to attempt to ascertain the current address of the particular individual in question and, if such an address is ascertained, the Settlement Administrator shall re-send the Notice by First Class U.S. Mail to the new address within three (3) business days of receiving the newly ascertained address.  With respect to envelopes marked "Return to Sender," the Settlement Administrator may also call any identified last- known telephone numbers (and telephone numbers updated through public and proprietary databases) of the Covered Individuals to obtain current addresses.

8.2.5 **Claims, Opt-out and Objection Period.**  The deadline for Covered Individuals to submit a Claim Form, object and/or opt out shall be forty-five (45) calendar days from the date of the

initial Notice mailing ("Claims Period").  Any such submission that is received by the Settlement Administrator or postmarked within the Claims Period shall be timely.  Any subsequent or corrected mailings pursuant to § 8.2.6, shall not restart or extend the 45-day period.

8.2.6 **Weekly summaries.**  During the Claims Period, the Settlement Administrator shall provide the Parties with weekly summaries as to the status of Notice mailings, including the number of Notices which were re-mailed, the number of successful and unsuccessful mailings, the number of completed Claim Forms, and the number of individuals who have opted out and/or objected.

8.2.7 **List of returned notices.**  The Settlement Administrator shall provide to Defendant's Counsel and Class Counsel, at least twenty (20) calendar days prior to the close of the Claims Period, a list of Covered Individuals to whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

8.2.8 **Settlement Administrator declaration.**  Class Counsel shall provide the Court, before the Final Approval Hearing, a declaration by the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Notice.

8.3 **Opt-Outs**

8.3.1 **How to opt out.**  Covered Individuals may request exclusion from the monetary relief provisions of the Settlement by "opting out" during the Claims Period.  Any individual who chooses to "opt out" must mail a written, signed statement to the Settlement Administrator that s/he is opting out ("Opt-Out Statement").  The

Opt-Out Statement must contain the name, address and telephone number of the individual to be valid. It must also contain the following words in order to be valid: "I decline to provide a release of claims and instead elect to exclude myself from the monetary relief provisions in the Settlement in *Sypherd v. Lazy Dog Restaurants, LLC.* That means I will not be entitled to any of the monetary proceeds of the Settlement." To be effective, such Opt-Out Statement must be sent via mail or email and postmarked or received by a date certain to be specified on the Notice. The postmark date of the mailing envelope shall be the exclusive means used to determine whether a request for exclusion (opt-out) has been timely submitted. Once an individual submits an Opt-Out Statement, he or she cannot later revoke it and cannot object to the Settlement, without prior written approval by the parties.

8.3.2  **Opt-out reporting.** The Settlement Administrator shall provide copies of each Opt-Out Statement (including a stamp on the original of the Opt-Out Statement showing the date it was received) to Class Counsel and Defendant's Counsel by email no later than two (2) business days after receipt thereof. The Settlement Administrator shall, within five (5) business days after the end of the Claims Period, email a final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel. Should Settlement Administrator receive any additional timely Opt-Out Statements after five (5) business days, the Settlement Administrator will email those to Class Counsel and Defendant's Counsel within one (1) business day. The Settlement Administrator shall retain the stamped originals of all Opt-Out

Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

### 8.4   Objections

8.4.1   **How to object.**   Covered Individuals who wish to present objections to the Settlement at the Final Approval Hearing must do so in a written, signed statement.  To be considered, such objections must be mailed to or filed in person with the Court during the Claims Period.  The postmarked date of the objection shall be the exclusive means for determining that a mailed objection is timely. The statement must contain the name, address and telephone number of the Covered Individual to be valid.  It must also contain words to the effect of "I object to the settlement in *Sypherd v. Lazy Dog Restaurants, LLC*, and understand that as a result of this objection, I am agreeing to submit to certain court proceedings, including having my deposition taken," and set forth the legal and factual basis for the objection.  Covered Individuals who fail to make objections in the manner specified herein shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Agreement.

8.4.2   **Objection reporting.**  If the Settlement Administrator receives any objections, it shall stamp on the original of any mailed objection or on the printed version of any emailed objection that it receives the date it was received and shall send copies of each objection to Class Counsel and Defendant's Counsel by email not later than two (2) business days after receipt thereof.  Class

Counsel shall file the objections with the Clerk of Court within three (3) business days after the end of the Claims Period. Should the Settlement Administrator receive any additional objections after two (2) business days after the end of the Claims Period, the Settlement Administrator will email those to Class Counsel and Defendant's Counsel within one (1) business day. Class Counsel must promptly file each objection it receives from any source other than the Court.

8.4.3 **Appearance by objector.** An objector who wishes to appear at the Final Approval Hearing must file with the Clerk of the Court and serve upon counsel designated in sections 1.6 and 1.13, a notice of intention to appear at the Final Approval Hearing ("Notice of Intention to Appear") no later than the deadline for the objection set forth in sections 1.5 and 8.2.5. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objector (or his/her counsel) shall present to the Court in connection with the Final Approval Hearing. Any Covered Individual who does not provide a Notice of Intention to Appear in complete accordance with the deadlines and other specifications set forth in the Notice and who has not filed an objection in complete accordance with the deadlines and other specifications set forth in this paragraph and the Notice, shall, subject to the Court's final determination in the exercise of its discretion, be deemed to have waived their opportunity to speak or otherwise present any views at any Final Approval Hearing.

8.4.4 **Objection withdrawal.** An objector may withdraw his/her objections at any time.

8.4.5 **Represented objector.**  Any lawyer representing a Covered Individual for the purpose of making objections must also file a Notice of Appearance with the Court by the deadline for the objection set forth in sections 1.7 and 8.2.5 and must also serve copies by mail on counsel for the Parties.

8.4.6 **No opt-out and objection.**  Any individual who has requested exclusion by submitting a valid Opt-Out Statement may not submit objections to the Settlement.  If an individual submits an objection and also submits an Opt-Out Statement, the objection will be deemed null and void because the individual has excluded himself/herself from the Settlement.

8.4.7 **Response to objection.**   Class Counsel and/or Defendant's Counsel should respond to any objections in the Final Approval Motion, any reply brief and, if appropriate, a separate submission at least seven (7) business days before the Final Approval Hearing to the extent practical.

8.4.8 **Waiver of Right to Appeal.** Provided that the Court's dismissal order is consistent with the terms and conditions of this Agreement, then Covered Individuals who did not properly object to the Settlement and their counsel, as well as Lazy Dog and its counsel, hereby waive any and all rights to appeal the dismissal order, including all rights to any post-dismissal proceeding and appellate proceeding, such as a motion to vacate the dismissal, a motion for new trial, a motion under Federal Rule of Civil Procedure 60 and any extraordinary writ, and the dismissal order therefore shall become final and non-appealable at the time it is entered.  The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-

dismissal proceedings.  Notwithstanding the foregoing, Named
Plaintiffs and their counsel do not waive their right to appeal any
order regarding attorneys' fees or costs.

8.5   **No Solicitation of Objection or Request to Opt-Out.**  The Parties agree that
the decision to opt out should be left to each Covered Individual.  If contacted
by a Covered Individual, Class Counsel may provide any advice or assistance
to any individual who so requests.  If Defendant's Counsel is contacted by
members of the Settlement Collective or California Class regarding the
Settlement, counsel shall refer the call or communication to Class Counsel.
In addition, at no time shall Plaintiffs, Lazy Dog, or their respective counsel
seek to solicit or otherwise encourage Covered Individuals or any other
persons to submit written objections to the Settlement or encourage Covered
Individuals to appeal the Court's final approval order and entry of judgment,
or to submit Opt-Out Statements.

## 9.   RESERVE CLAIMS PROCESS

9.1   **Structure.**   A "Reserve Fund" of Fifty-Five Thousand Dollars
($55,000.00) will be set aside from the Gross Settlement Amount to pay
any post-Finality "Reserve Claims" during the 15-month "Reserve
Period" beginning at Finality.   Any Claimant who both (a) seeks
employment with Lazy Dog in a Covered Position and (b) is not hired
into such position during the Reserve Period will be allowed to submit
a claim within the two months after the Reserve Period as the sole
remedy for any alleged age discrimination claim against Lazy Dog that
relates to their application.  Claimants will be barred from filing against
Lazy Dog or any of the Released Parties a lawsuit, an administrative
charge with the EEOC or state/local agencies, or an arbitration demand,
asserting claims of discrimination on the basis of age and/or claims of
retaliation for raising claims of discrimination on the basis of age,

relating to Lazy Dog's failure to hire them for any application made during the Reserve Period.  An individual submitting such a claim will be referred to as a "Reserve Petitioner."  This process shall be the Claimants' sole remedy for such claims.

9.2   **Reserve Fund Payment.**  Within three months after the reserve claim submission deadline, the Settlement Administrator will review all reserve claims to assess the merit of each claim. Each meritorious claim will be paid on a pro rata basis based on the same formula set forth in section 3.3.1 above except that no Reserve Fund Payment shall exceed the individual monetary award paid to each California Class Member. Payments of Reserve Claims, if any, will be made within two (2) months following the close of the three-month review period.

9.3   **Reserve Fund cap.**  In no circumstance will the payments made (to Reserve Petitioners or anyone else) exceed the amount of the Reserve Fund, and in no circumstance will Lazy Dog pay more than the Gross Settlement Amount because of the Reserve Fund process or for any reason.

9.4   **Redistribution.**  The part of the Reserve Fund that remains unclaimed will be the "Second Residue."  The First Residue and the Second Residue (together, the "Total Residue") will be redistributed to the Claimants who received money from the initial settlement distribution (as opposed to the Reserve Petitioners) as follows.  First, if there are fees incurred in Settlement Administration above those initially awarded by the Court that the Court orders to be paid from the Total Residue, those will be paid or held aside for future payment to the Settlement Administrator.   The remaining amount will be the "Redistribution Fund."  Then, (1) if the Redistribution Fund is greater than $30,000.00 it will be redistributed to the Claimants on a *pro rata*

basis, except that no Claimant will receive less than Ten Dollars ($10.00) through this redistribution (anyone whose redistribution payment would equal less than Ten Dollars ($10.00) shall receive no redistribution payment, and their share of the Redistribution Fund shall be allocated to the other Claimants); (2) if the Redistribution Fund is less than or equal to $30,000.00, the Redistribution Fund will be given as a *cy pres* donation to the California State Bar's Justice Gap Fund. No amount shall revert to Lazy Dog. If, after this redistribution, any funds remain, they will be disbursed pursuant to Court order.

9.5   **Confidentiality.**  All participants in the reserve petition process shall treat the process confidentially, including any reserve claims and awards, except that the Settlement Administrator will publicly disclose to the Court anonymized information regarding the process, including the aggregate dollar amount of any unclaimed portion of the Reserve Fund.

## 10.   PRELIMINARY AND FINAL APPROVAL

10.1   **Preliminary Approval by the Court.**  By November 19, 2021, Class Counsel shall submit to the Court a Motion for Preliminary Approval of the Settlement ("Preliminary Approval Motion").  The Preliminary Approval Motion shall seek the setting of dates for opt-outs, objections, and a Final Approval Hearing and shall present the [Proposed] Preliminary Approval Order attached hereto as Exhibit 4.

10.2   **Final Order and Judgment from the Court.**  Class Counsel shall seek to obtain from the Court a Final Approval Order by motion.  The Final Approval Motion shall, among other things, seek: (a) final certification of the California Class for purposes of settlement; (b) final approval of the Settlement Collective members' ADEA claims; (c) final approval of the California Class and Settlement Collective Members' claims as fair, adequate, reasonable, and

binding on all Covered Individuals who have not opted out; and (d) an entry of judgment in accordance with this Settlement.

10.3 **Final Approval Hearing.** The Final Approval Hearing shall be held at the Court's convenience, but not earlier than ninety (90) calendar days after CAFA notices are served.

10.4 **Non-Severability.** Except as otherwise stated in this Agreement, in the event that the Court voids any provision of the Settlement Agreement and/or any of its exhibits, the Parties shall renegotiate the Settlement Agreement to the mutual satisfaction of both Parties before resubmitting to the Court for approval. No Party shall be bound by the terms of the Settlement Agreement if the Court voids any provision of the Settlement Agreement and/or any of its exhibits, and the Parties fail to come to a written, binding agreement submitted to the Court that addresses the Court's order.

## 11. RELEASE

11.1 **Participating Class and Participating Collective Members.** Upon Finality, and except as to such rights or claims as may be created by this Agreement, each Participating Class and Participating Collective Member, on his/her behalf and on behalf of his/her respective current, former and future heirs, spouses, executors, administrators, agents and attorneys, fully releases, discharges, and waives any claims against the Released Parties until the Preliminary Approval Order or March 17, 2022 (whichever is earlier), including but not limited to all known and unknown claims, promises, causes of action, or similar rights of any kind that they presently have or may have for discrimination because of age arising out of or relating in any way to any of the legal, factual, or other allegations made in the Litigation, or any legal theories that could have been raised based on the allegations in the First Amended Complaint, including, without limitation, claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), the California Fair

Employment and Housing Act, Cal. Gov. Code §§12900 *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200 *et seq.*, or parallel state or local laws, except that Participating Class Members who are not Participating Collective Members will not release ADEA claims, since they have not opted into the ADEA Collective (the "Released Claims"). The Released Claims further include: (i) claims for disparate treatment and pattern or practice discrimination based on age with respect to hiring; and (ii) claims for disparate impact discrimination based on age with respect to hiring.

11.2 **Time limitation.** Except as provided by the Reserve Claims process set forth in section 9, nothing in this Agreement shall be construed to bar any claims of the Participating Class and Participating Collective Members based on or arising out of events occurring after Preliminary Approval or March 17, 2022 (whichever is earlier).

11.3 **Named Plaintiffs**. Upon Finality, and except as to such rights or claims as may be created by this Agreement, each Named Plaintiff shall execute the General Release against the Released Parties that is attached as Exhibit 3 to this Agreement.

## 12. RESTRICTIONS ON PUBLICITY

12.1 **Before Preliminary Approval.** Lazy Dog, Class Counsel and Covered Individuals shall maintain the confidentiality of the existence and terms of the Settlement, the Memorandum of Understanding, and this Settlement Agreement until the time of filing for preliminary settlement approval, except for disclosure to (a) insurance carriers; (b) board, executive leadership teams, partners, principals and employees on a need-to- know basis, provided they agree to treat the information as confidential; (c) in response to inquiries from regulators, or (d) as required by law.

///

///

## 13.   LAZY DOG'S RIGHT TO WITHDRAW OR MODIFY AGREEMENT

13.1   **Void option.**  If ten percent (10%) or more of the Settlement Collective or ten percent (10%) or more of the California Class validly opt out of the Settlement, Lazy Dog shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, either (i) to withdraw in writing from and rescind this Agreement in which case all actions taken in its furtherance shall be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Lazy Dog is entitled to withdraw from the Agreement and has validly done so, or (ii) to modify this Agreement through further negotiations with Class Counsel.  Lazy Dog must exercise this right within ten (10) business days after the Settlement Administrator sends the final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel by email pursuant to § 8.3.2.

## 14.   INTERPRETATION AND ENFORCEMENT OF AGREEMENT

14.1   **Entire Agreement.**   This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

14.2   **Binding Effect.**  Upon execution of this Agreement by the Parties and their counsel, this Agreement shall be binding upon the Parties unless the Court fails to approve the Agreement as set forth herein.

14.3   **Notices to Counsel.**  All notices to counsel required or desired to be given under this Agreement shall be in writing and by overnight mail and e-mail to lead counsel for the respective Parties.  Specifically, such notices shall be mailed to Jeffrey L. Hogue and Tyler J. Belong at the Hogue & Belong law firm for Plaintiffs and Mia Farber and Buck Haddix for Jackson Lewis P.C.

on behalf of Lazy Dog, their respective addresses set forth below (or to such other address as any such party of counsel may designate in a notice):

| | |
|---|---|
| Jeffrey L. Hogue<br>Tyler J. Belong<br>HOGUE & BELONG<br>170 Laurel Street<br>San Diego, California 92101<br>Jhogue@hoguebelonglaw.com<br>Tbelong@hoguebelonglaw.com | Mia Farber<br>Buck Haddix<br>JACKSON LEWIS P.C.<br>725 S. Figueroa Street, Suite 2500<br>Los Angeles, California 90017<br>Mia.Farber@jacksonlewis.com<br>Buck.Haddix@jacksonlewis.com |

14.4 **Arm's-Length Transaction; Materiality of Terms.**   The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

14.5 **Construction.**   The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.   Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

14.6 **Governing Law.**   This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of California, without regard to its choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

14.7 **Continuing Jurisdiction.**   The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby for three (3) years following Finality.

14.8 **Waivers, etc. to Be in Writing.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by, or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.9 **Counterparts.**  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Lazy Dog had signed the same instrument.  The failure of one or more Plaintiffs to sign this Agreement does not affect its enforceability, except as otherwise set forth herein.

14.10 **Facsimile/Electronic Signatures.**  Any Party may execute this Agreement by causing her or its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

## 15.   DUTIES OF THE PARTIES FOLLOWING COURT APPROVAL

15.1 **Final Order and Judgment.**  In connection with the Final Approval by the Court of this Agreement, Class Counsel and Counsel for Defendant shall submit a proposed final order and judgment:

(a) Granting Final Approval to the Agreement, adjudging the terms thereof to be fair, reasonable and adequate and directing consummation of its terms and provisions;

(b) Granting final certification of the California Class;

(c) Granting final certification for settlement purposes of the Settlement Collective;

(d) Dismissing the claims of the Settlement Collective members and the California Class members with prejudice and permanently barring all Participating Class and Participating Collective Members, including the Class Representatives, from prosecuting against any Released Parties any of the Released Claims;

(e) Granting approval of the Reserve Claims process as the sole remedy for Reserve Claims; and

(f) All materials, including data, provided by the Parties, their counsel and/or their experts, to the other Party, its counsel and/or its experts, shall be returned to the other Party's counsel or destroyed, within one-hundred eighty (180) calendar days after Finality, with the exception that the Parties may retain copies of their and their own experts' work product; copies of all filed documents (whether or not filed under seal or submitted to the court without being officially filed); and any materials necessary to oversee compliance with this Agreement.

*[SIGNATURES APPEAR ON FOLLOWING PAGE]*

The undersigned each hereby agree and consent to be bound by all of the forgoing terms of this Agreement.

**PLAINTIFFS:**

DATED: November _19_, 2021

Cathy Sypherd

DATED: November _18_, 2021

Kimberly Watt

DATED: November _18_, 2021

Patricia Brummett

**DEFENDANT:**

DATED: November _19_, 2021                 LAZY DOG RESTAURANTS, LLC

By:

Mariah Machnikowski, SPHR
Chief People Officer

Approved as to form by:

DATED: November _19_, 2021                 **HOGUE & BELONG**

By:

Jeffrey L. Hogue
Tyler J. Belong
Attorneys for Plaintiffs

DATED: November _19_, 2021                 **JACKSON LEWIS P.C.**

By:

Mia Farber
Buck Haddix
Attorneys for Defendant

Exhibit "1"

*Sypherd et al. v. Lazy Dog Restaurants, LLC,*  Case No. 5:20-CV-00921-FLA(KK)
**United States District Court for the Central District of California**

**Class and Collective Action Settlement Notice**

**A federal court authorized this notice.  This is not a solicitation from a lawyer.**

***Why am I receiving this?*** On [insert date of court order granting preliminary approval], the Court in this action granted preliminary approval of a proposed settlement as set forth in the Collective and Class Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement") concerning the lawsuit noted above (the"Lawsuit"). You are receiving this notice because (1) you previously submitted a Consent to Join form *and/or* (2) Lazy Dog Restaurants, LLC's ("Lazy Dog") records indicate that you are among the people eligible to participate in the Settlement process. This notice summarizes the terms of the Settlement.

***What is the Lawsuit about?***  The individuals who brought the Lawsuit, known as "the Plaintiffs," allege that Lazy Dog discriminated against them and other job applicants aged 40 and older by not hiring them when they applied for any non-managerial front of the house positions, including hosts, servers, bartenders, bussers, runners and take-out (collectively, "Covered Positions") at any of Lazy Dog's locations during the Relevant Time Periods.  The Relevant Time Period for the California Settlement Class is from December 4, 2015, through the earlier of either (a) March 17, 2022, or (b) the date of the Court's Preliminary Approval of Settlement.  The Relevant Time Period for the Settlement Collective is December 4, 2016, through the earlier of either (a) March 17, 2022, or (b) the date of the Court's Preliminary Approval of Settlement.  Lazy Dog denies the Plaintiffs' claims and allegations.

***What is the Settlement Amount?*** The Plaintiffs and Lazy Dog (collectively, "the Parties") have agreed to settle the Lawsuit for a total payment by Lazy Dog of $2,150,000.00.

YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT
ACT. PLEASE READ THIS NOTICE CAREFULLY.

| Summary of Your Legal Rights and Options | |
|---|---|
| **Submit a claim** | **Receive a settlement payment.  To receive a payment as part of the California Settlement Class and/or the Settlement Collective, you <u>must</u> complete and submit the form attached to this Notice (the "Claim Form"), as explained below in section 8 no later than [insert 45 days after mailing].** By submitting a Claim Form, you give up any right to bring future claims against Lazy Dog  based on allegations that are resolved by this Settlement. |
| **Exclude yourself from the Settlement** | **Get no payment.**  Keep any rights to bring or join a case against Lazy Dog about  the claims being resolved by this Settlement. You will lose the ability to recover any monetary payment under the Settlement. |
| **Object to the Settlement** | Write to the Court explaining why you do not like the Settlement, to help the Court decide whether to approve it**. The Court cannot order  that you receive more money from the Settlement even if it agrees with you.  If you decide to object the parties' attorneys may, at their election, take your deposition under penalty of perjury.** |
| **Do nothing** | **Get no payment.**  If you do nothing, you will not get a payment. **However, you will still release your claims that are covered by the Settlement and give up your right to assert the claims being resolved by this Settlement.** |

These rights and options—**and the deadlines to exercise them**—are explained in greater detail in this notice.

The Court has not yet decided whether to issue final approval of the Settlement. Payments will be made only if the  Court approves the Settlement and after appeals, if any, are resolved.

## What This Notice Contains

BASIC INFORMATION ..................................................................4
  1.  Why did I get this notice package? ....................................4
  2.  What is this lawsuit about? .................................................4
  3.  Why is this a class and collective action? ..........................5

THE SETTLEMENT BENEFITS—WHAT YOU GET ..............5
  4.  What does the Settlement provide? ....................................5

HOW YOU GET A PAYMENT.....................................................7
  5.  How can I get a payment?...................................................7

RELEASE AGREEMENT................................................................8
  6.  What am I giving up to get a payment?...............................8

THE LAWYERS REPRESENTING YOU ....................................8
  7.  Do I have a lawyer in this case? .........................................8
  8.  How will Class Counsel, Class Representatives, and Declarants be paid?..................................................................9

EXCLUDING YOURSELF FROM THE SETTLEMENT OR OBJECTING TO THE SETTLEMENT ...................................................9
  9.  How do I Exclude Myself from the Settlement? .................9
  10.  How do I Object to the Settlement?....................................10
  11.  What's the difference between objecting and excluding?..................10

THE COURT'S FINAL APPROVAL HEARING.......................11
  12.  When and where will the Court decide whether to approve the Settlement?.................................................................11

IF YOU DO NOTHING................................................................11
  13.  What happens if I do nothing at all?...................................11

GETTING MORE INFORMATION.............................................11
  14.  Are there more details about the Settlement?.....................11

**Basic Information**

## 1. Why did I get this notice package?

The purpose of this notice is to let you know that the Parties in the case have reached a Settlement, subject to the Court's final approval in this class and collective action, pending in the United States District Court for the Central District of California (the "Lawsuit"). You have received this notice because:

(i) You previously submitted a Consent to Join the Lawsuit form; and/or

(ii) Lazy Dog's records show that you applied – but were not hired – for a non-managerial front of the house positions, including hosts, servers, bartenders, bussers, runners and take-out (collectively, "Covered Positions") at any of Lazy Dog's locations in *California* from December 4, 2015 through March 17, 2022, and it appears that you were age 40 or older at the time you applied; and/or

(iii) Lazy Dog's records indicate that you applied – but were not hired – for a Covered Position at any of Lazy Dog's locations in the United States from December 4, 2016 through March 17, 2022, and it appears that you were age 40 or older at the time you applied.

The Court authorized this notice because you have a right to know about the proposed Settlement of the Lawsuit, and about your options. If the Court orders final approval of the Settlement and after any objections and appeals are resolved, a third-party administrator appointed by the Court will make the payments to claimants per the terms of the Settlement.

## 2. What is this lawsuit about?

Plaintiffs allege that Lazy Dog discriminated against them and other applicants aged 40 and older on the basis of age when they applied for Covered Positions. The Lawsuit asked the Court to require Lazy Dog to pay damages, penalties, and other compensation.

Lazy Dog denies these allegations and asserts that its hiring policies are lawful, merit-based, and have nothing to do with age.

The Court has made no determination regarding the merits of the claims.

4

### 3. Why is this a class and collective action?

In a class or collective action, one or more people, called "Class Representatives" (in this case, Cathy Sypherd, Patricia Brummett, and Kimberly Watt) sue on behalf of people who they believe have similar claims.  In a class action, all people with similar class claims are called "class members." Class members do not need to do anything to be part of a class action. Once the Court decides a case can proceed as a class action (as the Court here has done for purposes of this Settlement), all class members are included in the class by default, however individuals may elect to exclude themselves from the settlement (excluding is described in sections 13-15, below). In a class action, the court resolves the issues for all class members together in one legal proceeding. Class Members for purposes of this Settlement is defined in section 5, below.

Collective actions are similar to class actions. Some cases, like this one, have a class action component and a collective action component. Here, the federal Age Discrimination in Employment Act claim is brought as a collective action. To become a "Collective Member" you must opt into the action by submitting a Claim Form on or before _____ 2022.

## The Settlement Benefits—What You Get

### 4. What does the Settlement provide?

**Monetary relief.** Lazy Dog has agreed to pay $2,150,000.00 (Gross Fund) to cover the claims of Class Members and Collective Members, Claims Administration Fees, Class Counsel's Attorney's Fees and Costs and the Class Representatives' Service Award. Each Class and/or Collective Member who timely files a Claim Form and does not exclude himself or herself (collectively referred to as "Claimants"), will receive a share of the $2,150,000.00 amount.

Claimants will receive money from the Settlement fund based on the following calculations:

**Net Settlement Amount Calculation.**  The Gross Fund of $2,150,000 will be used in part to pay or reimburse costs and fees including: third party administrator fees, litigation expenses, attorneys' fees, etc.  The "Net Settlement Amount" is the amount remaining after deduction from the Gross Fund for Plaintiffs' Service Payments, Class Counsel's attorneys' fees and litigation expenses, and the Settlement Administrator's fees.

**California Settlement Class Payment Calculation.** The California Settlement Class will receive a "California Class Payment," which shall be the Net Settlement Amount multiplied by the percentage of the total number of California Class Members (numerator) as compared to the total number of Settlement Collective Members (denominator).   Each California Settlement Class Member who timely submits a valid Claim Form and does not timely exclude himself/herself, will receive a pro rata share of this California Class Payment.

**Settlement Collective Payment Calculation**.  The "Settlement Collective Amount" shall be the Net Settlement Amount less the California Class Payment. Each Settlement Collective Member who timely submits a valid Claim Form will receive a pro rata share of this Settlement Collective Amount.

**Tax treatment of awards.** The Settlement Agreement allocates how payments made to you under this Settlement should be treated for tax purposes. Accordingly, payments to Claimants are allocated for tax purposes as follows: thirty percent (30%) of all payments to Claimants will be allocated as wages, and normal payroll taxes and withholdings will be deducted from this portion of these monetary payments pursuant to applicable law. This portion of monetary payments will be reported on an IRS Form W-2. The remaining seventy percent (70%) will be allocated as liquidated damages and/or emotional distress, and interest and will be reported on an IRS form 1099. You will be responsible for correctly reporting this for tax purposes and for paying any taxes on the amounts received. You will be responsible for the tax obligations and consequences of all payments received from the Settlement. Lazy Dog, Defendant's Counsel, and Class Counsel are not providing tax advice to you, and they make no representations regarding the tax characterization of any Settlement payments or any tax obligations of, or tax consequences to, any Claimant.

**Reserve Fund.**  A "Reserve Fund" of Fifty-Five Thousand Dollars ($55,000.00) will be set aside from the Gross Settlement Amount to pay any post-Finality "Reserve Claims" during the 15-month "Reserve Period." Any Claimant who both (a) seeks employment with Lazy Dog in a Covered Position and (b) is not hired into such position during the Reserve Period will be allowed to submit a claim within the two months after the Reserve Period as the sole remedy for any alleged age discrimination claim against Lazy Dog that relates to their application.

Each meritorious claim will be paid on a pro rata basis based on the same formula set forth above except that no Reserve Fund Payment shall exceed the individual monetary award paid to each California Class Member.

Any part of the Reserve Fund that remains unclaimed will be redistributed to the Claimants who received money from the initial settlement distribution (as opposed to the Reserve Petitioners) as follows: if there are fees incurred in Settlement Administration above those initially awarded by the Court that the Court orders to be paid from the Total Residue, those will be paid or held aside for future payment to the Settlement Administrator.  The remaining amount will be the "Redistribution Fund."  Then, (1) if the Redistribution Fund is greater than $30,000.00, it will be redistributed to the Claimants on a *pro rata* basis, except that no Claimant will receive less than $10.00 through this redistribution (anyone whose redistribution payment would equal less than $10.00 shall receive no redistribution payment, and their share of the Redistribution Fund shall be allocated to the other Claimants); (2) if the Redistribution Fund is less than or equal to $30,000, the Redistribution Fund will be given as a *cy pres* donation to the California State Bar's Justice Gap Fund.  No amount shall revert to Lazy Dog.

## How You Get a Payment

**5       Q: How can I get a payment?   A: Submit your Claim Form.**

**To receive money from the California Settlement Class, if you are eligible, and/or the Settlement Collective, you must submit a completed Claim Form** (attached hereto as Exhibit __) either (a) electronically to [email address], or (b) by mail to [mailing address].  When filing a Claim Form, please use the Claimant ID: [__] and Verification Number: [__]. If you do not sign and submit a **fully completed** Claim Form by [deadline], you may not receive any money from the California Settlement Class or the Settlement Collective. In order to be deemed "complete," your Claim Form must include answers to all sections. You must include your Social Security number (for tax reporting purposes) and also sign the certification at the end of the Claim Form.

**To be valid, Claim Forms must be postmarked or emailed by [deadline].**

## Release Agreement
### 6. What am I giving up to get a payment?

**Release.** Unless you timely exclude yourself from the Settlement, you are staying in the California Settlement Class and/or Settlement Collective, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against Lazy Dog about the legal issues resolved by this Settlement. It also means that all of the Court's orders will apply to you and legally bind you. If you do not exclude yourself, you are knowingly and voluntarily releasing and waiving the following claims against Lazy Dog: any claims against Lazy Dog (and the Released Parties as defined in the Settlement Agreement) up until March 17, 2022, including but not limited to all known and unknown claims, promises, causes of action, or similar rights of any kind that they presently have or may have for discrimination because of age arising out of or relating in any way to any of the legal, factual, or other allegations made in the Litigation, or any legal theories that could have been raised based on the allegations in the First Amended Complaint, including, without limitation, claims under the Age Discrimination in Employment Act of 1967 ("ADEA") (except that Claimants who are California Settlement Class Members but not Settlement Collective Members and who do not submit Claim Forms will not release their federal ADEA claims), the California Fair Employment and Housing Act, Cal. Gov. Code §§12900 *et seq*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200 *et seq.*, and parallel state or local laws. In addition, if you submit the Claim Form, you are bound by the Reserve Fund process set forth below and in section 10 of the Settlement Agreement for certain claims that may arise in the future.

## The Lawyers Representing You
### 7. Do I have a lawyer in this case?

The Court preliminarily appointed the following attorneys to represent you and the other Settlement Class and/or Settlement Collective Members: Jeffrey L. Hogue, Esq. and Tyler J. Belong, Esq. of Hogue & Belong, APC.  These lawyers

are called Class Counsel or Plaintiffs' Counsel. **You will not be personally charged for these lawyers' work in securing the Settlement benefits for you and the other California Settlement Class and/or Settlement Collective Members.** If you want to be represented by your own lawyer, you may hire one at your own expense.

## 8. How will Class Counsel, Class Representatives, and Declarants be paid?

Class Counsel will ask the Court for attorneys' fees of up to thirty percent of the $2,150,000 Settlement fund and reimbursement of out-of-pocket costs of up to $175,000, consistent with the terms of the Settlement Agreement. In addition, Class Counsel will apply to the Court for a service award of up to $10,000 each for the three Class Representatives Cathy Sypherd, Patricia Brummett, and Kimberly Watt (for a total of $30,000). These service awards are being requested in recognition of the time and effort incurred by the three Class Representatives in securing the benefits of this Settlement for you and the other California Settlement Class and/or Settlement Collective Members. The Court will decide whether to approve Class Counsel's, and the Class Representatives' requests.

## Excluding Myself or Objecting to the Settlement

## 9. How do I exclude myself from the Settlement?

To exclude yourself from (opt out of) the Settlement and not release any claims, you must send a letter saying that you want to be excluded from the Settlement, and that you understand that you will not receive money from it. You must include your (1) name, (2) address, (3) telephone number, (4) signature and the following statement: "I decline to provide a release of claims and instead elect to exclude myself from the monetary relief provisions in the Settlement in *Sypherd et al. v. Lazy Dog Restaurants, LLC*. That means I will not be entitled to any of the monetary proceeds of the Settlement."

Your opt-out request must be emailed or postmarked by [insert date]. Opt-out requests should be sent electronically or by mail to the Settlement Administrator, whose contact information is listed in section 16.

**If you ask to be excluded, you will not get any Settlement payment,** and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit, and the Settlement would not affect any right you might have, if any, to pursue legal action against Lazy Dog on your own.

9

## 10. How do I object to the Settlement?

If you are a California Settlement Class or Settlement Collective Member, you can object to the Settlement. But, if you do not want to be a part of the settlement, you can instead exclude yourself as described above.

The Court cannot order a larger (or smaller, or otherwise different) settlement; it can only approve or deny the Settlement. If the Court denies approval, there will be no settlement at this time, no Settlement payments will be sent out, and the Lawsuit will continue.

Any objection to the proposed Settlement must be signed and in writing. Your statement must contain your name, address, and telephone number to be valid. It must also contain the words "I object to the proposed settlement in *Sypherd et al. v. Lazy Dog Restaurants, LLC*, and understand that as a result of this objection, I am agreeing to submit to certain court proceedings, including having my deposition taken," and state the legal and factual basis for the objection. **If you object, either party may demand that you produce records and appear for a deposition in this action**. If you do not follow these instructions to make an objection, you will waive any objections and will be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written comments and objections and supporting papers must (a) clearly identify the case name and number (as *Sypherd et al. v. Lazy Dog Restaurants, LLC,* Case No. 5:20-CV-00921-FLA(KK), (b) be submitted to the Claims Administrator, and (c) be postmarked on or before [insert deadline].

## 11. What's the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement and explaining the reasons why, in which case the parties' attorneys may request that you appear for a deposition so that they can question you about the stated reasons for your objection. Excluding yourself is telling the Court that you do not want to be part of the Class and instead preserve your right to assert these claims in another lawsuit. If you exclude yourself, you have no basis to

object because you are out of the California Settlement Class or Settlement Collective, so the case no longer affects you.

## The Court's Final Approval Hearing

The Court will hold a final approval hearing to decide whether to approve the Settlement, but **you do _not_ have to attend the hearing.**  If you decide to attend, you you may ask to speak, but you do not have to.  The judge will decide whether or for how long to allow you to speak.

## 12. When and where will the Court decide whether to approve the Settlement?

The Court will hold a final approval hearing at [insert time and date], at the United States District Court for the Central District of California, First Street Courthouse, 350 W. 1st Street, Courtroom 6B, 6th Floor, Los Angeles, California 90012.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the Settlement.  The final approval hearing may be postponed without further notice to the California Settlement Class or Settlement Collective. If you plan to attend the hearing, you should check the Court's PACER site at https://ecf.cand.uscourts.gov to confirm that the date has not been changed.

## If You Do Nothing

## 13. What happens if I do nothing at all?

If you do nothing, you'll get no money from this Settlement. To be eligible to receive money from this Settlement, you must timely submit a completed Claim Form. If you do nothing, you won't be able to start any separate lawsuit, continue with a lawsuit, or be part of any other lawsuit against Lazy Dog for the claims you are releasing in this Settlement. Doing nothing will not affect your right to assert claims against Lazy Dog arising after March 17, 2022.

## 14. How Do I Get More Information about the Settlement?

The Collective and Class Action Settlement and Release, First Amended Complaint, and this Notice are all available at https://pacer.uscourts.gov.

You may also obtain more information by contacting the Settlement Administrator at [insert phone number], Class Counsel at Hogue & Belong, APC at

(619) 238-4720, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Central District of California, First Street Courthouse, 350 W. 1st Street, Courtroom 6B, 6th Floor, Los Angeles, California 90012, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

By order of the United States District Court for the Central District of California.

Dated: [DATE]

Exhibit "2"

*Sypherd et al. v. Lazy Dog Restaurants, LLC,* Case No. 5:20-CV-00921-FLA(KK)

**United States District Court for the Central District of California**

**<u>Claim Form</u>**

**Instructions**

**1. The purpose of this Claim Form is to allow payment of settlement funds to you.** To received money from this settlement you must sign and submit this Claim Form either (a) electronically to [email address], or (b) via mail to [mailing address]. To be valid, signed and completed Claim Forms must be emailed or postmarked by [deadline]. **If you do not sign and submit a completed Claim Form by [deadline], you will receive no money from this Settlement.**

**2. The Claim Form is confidential.** All information you provide on this Claim Form will be kept confidential to the greatest extent possible. Unless otherwise ordered by the Court, it will only be viewed by: (a) the Court-appointed Settlement Administrator, (b) Class Counsel, (c) Lazy Dog and its Counsel, and (d) the Court (if requested and subject to appropriate confidentiality protections). However, if in the future you attempt to assert claims against Lazy Dog and it contends you are not allowed to bring those claims pursuant to the terms of the Settlement, Lazy Dog may use your Claim Form and participation in the Settlement to respond to those claims.

**3. Qualification for Submitting this Claim Form.** In order to receive payment from this settlement, you must have been age 40 or older at the time you applied for employment at Lazy Dog, and you must submit this Claim Form. If you applied for employment at Lazy Dog on multiple occasions, as long as you were age 40 or older on at least *one* of those occasions, you qualify for payment from this settlement and should submit this Claim Form. However, if you *never* applied for employment at Lazy Dog at a time when you were age 40 or older, do not submit this Claim Form.

**4. Completeness.** To receive money from this settlement, you must fully complete this Claim Form and all its components, including all sections including <u>signing</u> the certification at the end. If your Claim Form is missing information or incomplete in any way, or is not timely submitted, you will not receive money from this Settlement.

**Information Required For Class and Collective Settlement**

| Personal Information | |
|---|---|
| 1. Name | [Pre-Populated by CPT] |
| 3. Social Security Number (required for identification and tax purposes) | |

## Certification of Age at Time of Application

By signing and submitting this Claim Form below, I certify that at the time I applied for a position of employment at Lazy Dog, I was 40 years old or older.

## Consent Required for Participation in Collective Settlement

By my signature below, I consent to join, opt-in, and become a party to the collective action *Cathy Sypherd, et al., v. Lazy Dog Restaurants, LLC,* Case No. 5:20-cv-00921-FLA-KK in the United States District Court for the Central District of California, which alleges claims under The Age Discrimination in Employment Act of 1967 ("ADEA").  I understand and agree that by joining in this action, I will be bound by any adjudication of the Court in this action.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and if called upon to testify under oath, I would testify that the information I have provided is true and correct.

| Signature | |
| --- | --- |
| Date signed | |

## Address Update/Correction (Optional)

If you have moved or plan on moving after the date that you receive(d) the Claim Form, please provide your most current address so that we can better ensure that any payment to which you are entitled is timely issued to you.

| Updated Address (if applicable) | |
| --- | --- |

*-   End of Claim Form   -*

Exhibit "3"

1 | Jeffrey L. Hogue (SBN 234557)
*jhogue@hoguebelonglaw.com*
2 | Tyler J. Belong (SBN 234543)
*tbelong@hoguebelonglaw.com*
3 | Mark A. Simpliciano (SBN 331516)
*msimpliciano@hoguebelonglaw.com*
4 | **HOGUE & BELONG**
170 Laurel Street
5 | San Diego, CA 92101
Tel:   (619) 238-4720
6 | Fax:   (619) 238-5260

7 | Attorneys for Plaintiffs

8 | Mia Farber (SBN 131467)
*mia.farber@jacksonlewis.com*
9 | Buck Haddix (SBN 295334)
*buck.haddix@jacksonlewis.com*
10 | **JACKSON LEWIS P.C.**
725 South Figueroa Street, Suite 2500
11 | Los Angeles, California 90017-5408
Telephone:   (213) 689-0404
12 | Facsimile:   (213) 689-0430

13 | Attorneys for Defendant

14 |

15 | **UNITED STATES DISTRICT COURT**

16 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

17 |

18 | CATHY SYPHERD, individually, PATRICIA BRUMMETT, individually, and KIMBERLY WATT, individually, and on behalf of all others similarly situated,

**CASE NO.:  5:20-CV-00921-FLA(KK)**

[*Assigned to District Judge Fernando L. Aenlle-Rocha and Magistrate Judge Kenly Kiya Kato*]

Plaintiffs,

vs.

**PLAINTIFFS' INDIVIDUAL SETTLEMENT AGREEMENT AND GENERAL RELEASE**

LAZY DOG RESTAURANTS, LLC, a California Corporation; and DOES 1-50,

Defendants.

Complaint Filed:  May 1, 2020
FAC Filed:       June 15, 2020

Subject to approval by the United States District Court for the Central District of California, this Individual Settlement Agreement and General Release of All Claims ("General Release") is entered into by and between Cathy Sypherd, Patricia Brummett and Kimberly Watt (collectively, "Named Plaintiffs") and Lazy Dog Restaurants, LLC ("Defendant" or "Lazy Dog").  The term "Party" or "Parties" as used herein shall refer to Plaintiffs, Defendant or both, as may be appropriate.

1.   **Recitals.**   This General Release is made with reference to the following facts alleged in the operative Complaint:

(a)   Named Plaintiffs applied for and but were not hired for front-of-the-house positions at Lazy Dog's restaurant in Corona, California.

(b)   On June 15, 2020, Named Plaintiffs filed an amended collective and class action Complaint, which is pending as *Cathy Sypherd, Patricia Brummett and Kimberly Watt vs. Lazy Dog Restaurants, LLC* in the United States District Court for the Central District of California, Case No. 5:20-CV-00921-FLA(KK) (the "Action").

(c)   In the amended collective and class action Complaint, Plaintiffs assert claims for violations of the federal Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12900, *et seq.* ("FEHA") and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), including both intentional discrimination and disparate impact theories, for alleged failure or refusal to hire qualified workers over 40 years old and older.

(d)   The parties entered into a separate Collective and Class Action Settlement Agreement and Release to fully, finally and forever settle, compromise and discharge all disputes and claims arising from or related to the Action which exist between Named Plaintiffs, putative class members, and the parties released therein.  Pursuant to the terms of the Collective and Class Action Settlement Agreement and Release (the "Class and Collective Settlement Agreement"), Named Plaintiffs agreed to sign a General Release in exchange for Service Awards.

(e)     There has been no determination on the merits of the Action but, in order to avoid additional cost and the uncertainty of litigation, the Named Plaintiffs and Defendant have agreed, subject to the provisions in Paragraphs 3 and 4 below, to resolve any and all claims, known and unknown, asserted and unasserted, which the Named Plaintiffs in their individual capacity have or may have against Defendant, and its direct and indirect parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, reinsurers, representatives, professional employment organizations, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to as the "Released Parties") as of the date of execution of this General Release.

**2.**     **No Admission of Wrongdoing**.  The Parties agree that neither this General Release nor the furnishing of the consideration for this General Release shall be deemed or construed at any time for any purpose as an admission by Defendant and the Released Parties of wrongdoing or evidence of any liability or unlawful conduct of any kind.

**3.**     **Consideration, General Release, Claims Not Released and Related Provisions**.

(a)     **General Release of Claims**.  Named Plaintiffs expressly agree that they have received full and fair consideration for the promises made in this release, and acknowledge that the consideration given for this release is in addition to anything of value to which they are already entitled in the Collective and Class Action Settlement Agreement and Release, including the Service Awards to Plaintiffs.  Named Plaintiffs individually and on behalf of their heirs, executors, administrators, representatives, attorneys, successors, and assigns knowingly and voluntarily release and forever discharge Defendant and the Released Parties, to the full extent permitted by law, of and from any and all claims, known and unknown, asserted and unasserted, which Named Plaintiffs have or may have against

Defendant and the Released Parties as of the date of execution of this General Release including, but not limited to, any alleged violation of:

Title VII of the Civil Rights Act of 1964;

The Civil Rights Act of 1991;

Sections 1981 through 1988 of Title 42 of the United States Code, as amended;

The Employee Retirement Income Security Act of 1974 ("ERISA");

The Internal Revenue Code of 1986;

The Immigration Reform and Control Act;

The Americans with Disabilities Act of 1990;

The Age Discrimination in Employment Act of 1967 ("ADEA");

The Older Workers Benefit Protection Act of 1990;

The Workers Adjustment and Retraining Notification Act;

The Fair Credit Reporting Act;

The Family and Medical Leave Act;

The Equal Pay Act;

The Genetic Information Nondiscrimination Act of 2008;

The Sarbanes-Oxley Act of 2002;

California Family Rights Act – Cal. Gov't Code § 12945.2;

California Fair Employment and Housing Act – Cal. Gov't Code § 12900 et seq.;

California Unruh Civil Rights Act – Cal. Civ. Code § 51 et seq.;

Statutory Provisions Regarding the Confidentiality of AIDS Information – Cal. Health Safety Code § 120775 et seq.;

California Confidentiality of Medical Information Act – Cal. Civ. Code § 56 et seq.;

California Parental Leave Law – Cal. Lab. Code § 230.7 et seq.;

California Equal Pay Law – Cal. Lab. Code § 1197.5;

The Occupational Safety and Health Act;

The California Occupational Safety and Health Act, as amended, and any applicable regulations thereunder;

The California Consumer Credit Reporting Agencies Act – Cal. Civ. Code § 1785 et seq.;

California Investigative Consumer Reporting Agencies Act – Cal. Civ. Code § 1786 et seq.;

Those provisions of the California Labor Code that lawfully may be released;

Any other federal, state or local civil or human rights law or any other federal, state or local law, regulation or ordinance;

Any public policy, contract, tort or common law; or

Any basis for recovering costs, fees or other expenses including attorneys' fees incurred in these matters.

(b)     **Claims Not Released**.   Named Plaintiffs are not waiving any rights they may have to: (i)  pursue claims which by law cannot be waived by signing this General Release; (ii) enforce this General Release; or (iii) challenge the validity of this General Release.

(c)     **Governmental Agencies**.  Nothing in this General Release prohibits, prevents, or otherwise limits Named Plaintiffs from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, action, or other proceeding before any federal, state, or local government agency (*e.g.*, EEOC, NLRB, SEC, DFEH, DLSE, *etc.*) or in any legislative or judicial proceeding, nor does anything in this General Release preclude, prohibit, or otherwise limit, in any way, Named Plaintiffs' rights and abilities to contact, communicate with, or report unlawful conduct to federal, state, or local officials for investigation, or otherwise participate in any whistleblower program administered by any such agencies.  However, to the maximum extent permitted by law, Named Plaintiffs agree that if such an administrative claim is made, they shall not be entitled to recover any individual monetary relief or other individual remedies.

(d)    **Collective/Class Action Waiver**.  If any claim is not subject to release, to the extent permitted by law, Named Plaintiffs waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective, or multi-party action or proceeding based on such a claim in which Defendant, or any of the other Released Party is a party.

(e)    **Consideration for General Release**.  In consideration for the general release, Named Plaintiffs shall be entitled to receive the Service  Award of $10,000.00 each (i.e., total aggregate of $30,000.00), subject to the Court's approval of such Service Award, in addition to any *pro rata* share of the California Fund or Collective Fund under the terms of the Collective and Class Action Settlement.  This General Release, including all of its terms, is expressly conditioned on the Court granting final approval of the Collective and Class Action Settlement and awarding Plaintiffs each the full Service Award referenced in the Class and Collective Settlement Agreement.  If the Court does not grant final approval of the Class and Collective Settlement, including granting Plaintiffs' requested Service Award described above, this General Release and every term in it will be deemed null and void.

**4.    Waiver of California Civil Code section 1542**.  To effect a full and complete general release as described above, Named Plaintiffs expressly waive and relinquish all rights and benefits of section 1542 of the Civil Code of the State of California, and do so understanding and acknowledging the significance and consequence of specifically waiving section 1542.  Section 1542 of the Civil Code of the State of California states as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Thus, notwithstanding the provisions of section 1542, and to implement a full and complete release and discharge of Defendant and the Released Parties, Named Plaintiffs expressly

acknowledge this General Release is intended to include in its effect, without limitation, all claims Named Plaintiffs do not know or suspect to exist in Named Plaintiffs' favor at the time of signing this General Release, and that this General Release contemplates the extinguishment of any such claims.  Named Plaintiffs warrant they have read this General Release, including this waiver of California Civil Code section 1542, and that they have consulted with or had the opportunity to consult with counsel of their choosing about this General Release and specifically about the waiver of section 1542, and that they understand this General Release and the section 1542 waiver, and so they are freely and knowingly entering into this General Release.  Named Plaintiffs further acknowledge that they later may discover facts different from or in addition to those them now know or believe to be true regarding the matters released or described in this General Release, and even so they agree that the releases and agreements contained in this General Release shall remain effective in all respects notwithstanding any later discovery of any different or additional facts.  Named Plaintiffs expressly assume any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies released or described in this General Release or with regard to any facts now unknown to them relating thereto.

**5.** **Acknowledgements and Affirmations**.

(a) Named Plaintiffs affirm that they have not filed or caused to be filed any claim, complaint, or action against Defendant or any of the Released Parties in any forum or form, other than the Action and the complaints of discrimination with the Equal Employment Opportunity Commission and Department of Fair Employment and Housing, and that Plaintiffs presently are not a party to any claim, complaint, or action against Defendant or any of the Released Parties in any forum or form, other than the Action. Nothing in this General Release or the acknowledgements and affirmations in this Section 5 is intended to impair Named Plaintiffs' rights under whistleblower laws or cause Named Plaintiffs to disclose their participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b)      Named Plaintiffs also affirm that they have not reported internally to Defendant any allegations of wrongdoing by Defendant or its officers, including, any allegations of corporate fraud, and they have not been retaliated against for reporting any such allegations internally to Defendant, except as alleged in the Action and which claims are expressly released in Section  three above.

**6.      No Transfer/Assignment of Claims**.      Named Plaintiffs warrant and represent that they have not assigned or transferred or purported to assign or transfer to any person or entity all or any part of or any interest in any claim released under this General Release.  Named Plaintiffs and Plaintiffs' Counsel agree that they solely are responsible for the satisfaction of any assignment or lien to any lien holder and will indemnify and hold the Released Parties harmless against any liens, damages, penalties, fines, fees, assessments, taxes or attorneys' fees that may be imposed against or incurred by any of the Released Parties as a result of the actions of any lien holder or any lien claimant or any taxing authority or any court in relation to any interest which any third party may have in any claim which Named Plaintiffs are releasing under this General Release or any interest in any of the proceeds paid to Named Plaintiffs or Plaintiffs' Counsel under this General Release.

**7.      Waiver of Employment**.  Named Plaintiffs acknowledge that because of circumstances unique to them, *inter alia*, irreconcilable differences, they shall not apply in the future for employment with Defendant or their present or future divisions, affiliated, related, successor, parent or subsidiary companies.  Named Plaintiffs further agree that Defendant and their present or future divisions, affiliated, related, successor, parent or subsidiary companies shall not be liable for any damages now or in the future because one of them refuses to employ them for any reason whatsoever.

**8.      Liens and Attorneys' Fees/Indemnification**.

(a)      Except with respect to any attorney's fees and costs finally approved by the Court in connection with the Collective and Class Action Settlement Agreement and Release, the conditions of which are set forth in said Agreement, Named Plaintiffs

acknowledge they are solely responsible for any liens made in connection with any services performed on their behalf by any attorney, consultants, expert witnesses or healthcare providers.  Each Party solely is responsible for any fees and costs he, she or it has incurred including, but not limited to, fees for attorneys, consultants and expert witnesses.   Named Plaintiffs acknowledge that Defendant and the Released Parties are not responsible for the payment of any fees incurred on behalf of Named Plaintiffs in connection with the prosecution of the Action.

(b)    Named Plaintiffs acknowledge and agree that they will indemnify Defendant and the Released Parties for any and all costs any of them incur as a result of any claims made by any attorneys, consultants, expert witnesses, healthcare providers or other third parties to recover monies from the amounts payable to Named Plaintiffs or Plaintiffs' Counsel under this General Release.

**9.** **Knowing Waiver of Age Discrimination Claims**.   Named Plaintiffs acknowledge that they already have attained the age of 40 and by entering into this Agreement, they waive and release Defendant and the Released Parties from any claims for age discrimination under the Age Discrimination in Employment Act and the California Fair Employment and Housing Act.  Named Plaintiffs also acknowledge that they have been informed pursuant to the Federal Older Workers Benefit Protection Act of 1990 that:

(a)    Named Plaintiffs have the right to consult with an attorney before signing this Agreement;

(b)    Named Plaintiffs do not waive rights or claims under the federal Age Discrimination in Employment Act or age discrimination claims under the California Fair Employment and Housing Act that may arise after the date this waiver is executed;

(c)    Named Plaintiffs have twenty-one (21) days from the date they receive this Agreement to consider this Agreement; and

(d)    Named Plaintiffs have seven (7) days after signing this Agreement to revoke the Agreement and the Agreement will not be effective until that revocation period has expired.

## **10.   Consideration and Revocation Periods - Notice**.

(a)   Named Plaintiffs acknowledge that they already have attained the age of 40 and understand this is a full release of all existing claims whether currently known or unknown including, but not limited to, claims for age discrimination under the Age Discrimination in Employment Act.

(b)   Named Plaintiffs further acknowledge they have been advised to consult with an attorney of his own choosing before signing this Agreement in which they waive important rights including those under the Age Discrimination in Employment Act.

(c)   By executing this Agreement, Named Plaintiffs also acknowledge that they have been afforded at least twenty-one (21) calendar days to consider the meaning and effect of this Agreement and to discuss the contents and meaning of this Agreement, as well as the alternatives to signing this Agreement, with an attorney of their choosing, and has done so.

(d)   Named Plaintiffs understand that the releases contained in this Agreement do not extend to any rights or claims that he has under the Age Discrimination in Employment Act that first arise after execution of this Agreement.

(e)   If Named Plaintiffs sign this Agreement before the 21-day consideration period expires, the seven-day revocation period (described in Paragraph 11(f) below) immediately shall begin.  If Named Plaintiffs sign this Agreement before the 21-day consideration period expires, they agree that they knowingly and voluntarily have accepted the shortening of the 21-day consideration period and that Defendant has not promised them anything or made any representations that are not contained in this Agreement.  In addition, if Named Plaintiffs sign this Agreement before the 21-day consideration period expires, they acknowledge and affirm that Defendant has not threatened to withdraw or alter the offer contained in this Agreement prior to the expiration of the 21-day consideration period.

(f)   Named Plaintiffs may revoke this Agreement for a period of seven calendar days following the date they execute this Agreement.  Any revocation during this

period must be submitted in writing and state, "I hereby revoke my acceptance of our Agreement and General Release of All Claims."  The revocation must be mailed to Mia Farber, Esq., Jackson Lewis LLP, 725 South Figueroa Street, Suite 2500, Los Angeles, California 90017, and postmarked within seven calendar days after Plaintiffs' execution of this Agreement.  If the last day of the revocation period falls on a Sunday or legal holiday in the state of California, then the revocation period shall not expire until the next following day which is not a Sunday or legal holiday in the state of California.  The foregoing notwithstanding, this Agreement shall not become effective and enforceable until the seven-day revocation period has expired.

**11.  Governing Law and Interpretation.**

(a)  This General Release shall be governed and conformed in accordance with the laws of the State of California provided, however, that parole evidence shall not be admissible to alter, vary or supplement the term of this General Release.  Should any provision of this General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision immediately shall become null and void, leaving the remainder of this General Release in full force and effect.

(b)  In the event of a breach of any provision of this General Release, any Party may institute an action specifically to enforce any term or terms of this General Release or seek damages for breach.  In an action to enforce any term or terms of this General Release or to seek damages for breach of this General Release, the prevailing party in that action shall be entitled to recover reasonable attorney's fees.

**12.  Amendment**.  This General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this General Release.

**13.  Miscellaneous.**

(a)  This General Release may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same

instrument.  A signature made on a faxed or electronically mailed copy of the General Release or a signature transmitted by facsimile or electronic mail shall have the same effect as the original signature.

(b)    The section headings used in this General Release are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

(c)    This General Release was the result of negotiations between the Parties and their respective counsel.  In the event of vagueness, ambiguity or uncertainty, this General Release shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

(d)    If Plaintiffs or Defendant fail to enforce this General Release or to insist on performance of any term, that failure does not mean a waiver of that term or of the General Release.  The General Release remains in full force and effect anyway.

**14.    Entire Agreement**.  This General Release and the Collective and Class Settlement Agreement and Release sets forth the entire agreement between the Named Plaintiffs and Defendants and the Released Parties hereto, and fully supersedes any prior agreements or understandings between them.  Named Plaintiffs acknowledge that they have not relied on any representations, promises or agreements of any kind made to them in connection with their decision to accept this General Release, except for those set forth in this General Release.

**NAMED PLAINTIFFS UNDERSTAND AND ACKNOWLEDGE THAT THEY HAVE HAD AT LEAST TWENTY-ONE (21) CALENDAR DAYS TO REVIEW THIS AGREEMENT PRIOR TO EXECUTION OF THE AGREEMENT.  NAMED PLAINTIFFS FURTHER UNDERSTAND AND ACKNOWLEDGE THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION**

**PERIOD.HAVING ELECTED TO EXECUTE THIS GENERAL RELEASE, TO FULFILL THE PROMISES AND TO RECEIVE THE CONSIDERATION SET FORTH IN SECTION** THREE **ABOVE, PLAINTIFFS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTER INTO THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS NAMED PLAINTIFFS HAVE OR MIGHT HAVE AGAINST DEFENDANT AND THE RELEASED PARTIES AS OF THE DATE OF EXECUTION OF THIS GENERAL RELEASE.**

IN WITNESS WHEREOF, the Parties hereto knowingly and voluntarily executed this General Release as of the date set forth below:

Executed on _____        _____
                                       Cathy Sypherd

Executed on _____        _____
                                       Patricia Brummett

Executed on _____        _____
                                       Kimberly Watt

                                       LAZY DOG RESTAURANTS, LLC

Executed on _____   By:  _____
                                       MARIAH MACHNIKOWSKI, SPHR
                                       CHIEF PEOPLE OFFICER

1
2
3

**Approved as to form and content.**

4
5

HOGUE & BELONG

6
7

Executed on _____, 2021   By:   _____

8

JEFFREY L. HOGUE, ESQ.
TYLER J. BELONG, ESQ.

9
10

Attorneys for Plaintiffs
CATHY      SYPHERD;      PATRICIA

11

BRUMMETT;
KIMBERLY WATT

12

JACKSON LEWIS P.C.

13
14

Executed on _____, 2021   By:   _____

15

MIA FARBER, ESQ.
BUCK HADDIX, ESQ.

16
17

Attorneys for Defendant

18

LAZY DOG RESTAURANTS, LLC

19
20
21
22
23
24
25
26
27
28

Exhibit "4"

Jeffrey L. Hogue (SBN 234557)
*jhogue@hoguebelonglaw.com*
Tyler J. Belong (SBN 234543)
*tbelong@hoguebelonglaw.com*
**HOGUE & BELONG**
170 Laurel Street
San Diego, CA 92101
Tel:   (619) 238-4720
Fax:   (619) 238-5260

Attorneys for Plaintiffs

Mia Farber (SBN 131467)
*mia.farber@jacksonlewis.com*
Buck Haddix (SBN 295334)
buck.haddix@jacksonlewis.com

**JACKSON LEWIS P.C.**
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone:   (213) 689-0404
Facsimile:   (213) 689-0430

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHY SYPHERD, individually, PATRICIA BRUMMETT, individually, and KIMBERLY WATT, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>LAZY DOG RESTAURANTS, LLC, a California Corporation; and DOES 1-50,<br><br>    Defendants. | **CASE NO.:  5:20-CV-00921-FLA(KK)**<br><br>[*Assigned to District Judge Fernando L. Aenlle-Rocha and Magistrate Judge Kenly Kiya Kato*]<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR PRELIMNARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT**<br><br>Complaint Filed:  May 1, 2020<br>FAC Filed:       June 15, 2020 |

On December 17, 2020, a hearing was held on the unopposed motion of Plaintiffs Cathy Sypherd, Patricia Brummett, and Kimberly Watt ("Plaintiffs") for an order to: (1) conditionally certify the Settlement Collective[1] and Settlement Class; (2) preliminarily approve the parties' proposed collective and class action settlement (the "Settlement"); (3) appoint Plaintiffs as the Class Representatives, their counsel as Class Counsel, and CPT Group, Inc. as Settlement Administrator; (4) set the deadlines for filing Claim Forms, written exclusions, or objections to the Settlement; (5) approve the forms of notice to the Settlement Collective and Settlement Class of the Settlement and the Claim Form; and (6) schedule a hearing on the final approval of the Settlement for _____, 2022 (the "Preliminary Approval Motion"). Jeffrey Hogue and Tyler Belong appeared for Plaintiffs.  Mia Farber  appeared for Defendant Lazy Dog Restaurants, LLC ("Lazy Dog"):

Having considered the papers on the motion, the arguments of counsel, and the law, the Court now enters this Preliminary Approval Order and FINDS,

_____

[1]      Unless otherwise specified herein, all capitalized terms have the meaning defined in the Collective And Class Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), which is attached to the Declaration of Jeffrey Hogue in Support of Unopposed Motion for Preliminary Approval of Settlement ("Hogue Decl.")

CONCLUDES, and ORDERS as follows:

## I.   NATURE OF ACTION

Plaintiffs allege that Lazy Dog engaged in age discrimination in its job application and hiring policies, practices and systems regarding applicants for non-managerial front of the house positions, including hosts, servers, bartenders, bussers, runners and take-out ("Covered Positions") in violation of federal and California state laws.  Lazy Dog disputes and denies all of Plaintiffs' claims.  Lazy Dog contends that it has fully complied with all applicable laws at issue in this matter.

## II.   CONDITIONAL CERTIFICATION OF RULE 23 SETTLEMENT CLASSES

### A. Rule 23 Settlement Class and ADEA Collective

For settlement purposes only, the Parties have proposed conditional certification of the following Settlement Class and Settlement Collective, defined as:

(1) **Settlement Class**: "California Class" or "California Class Members" means all applicants who, between December 4, 2015 to Preliminary Approval or March 17, 2022 (whichever is earlier) (inclusive), (a) applied for and were denied a Covered Position in California, or (b) resided in California at the time they applied to a Covered Position and were denied; and were aged 40 or older at the time of application.

(2) **Settlement Collective:** "Settlement Collective" or "Settlement

Collective Members" means all the applicants (a) who applied to and were denied Covered Positions on or after December 4, 2016, (b) who were aged 40 or older at the time of application, and (c) who opt(ed) into this Litigation pursuant to the federal Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA") on or before October 8, 2021.[2]

### B. Conditional California And Rule 23 Certification

The Court hereby finds and concludes that for purposes of the Settlement only, the California Class satisfies all of the requirements for certification under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

**1.** The California Class is sufficiently numerous that joinder is impracticable.

**2.** The members of the California Class share common issues of fact and law regarding whether Lazy Dog's policies and practices discriminate against Class Members, whether they violate the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12900, et seq.("FEHA"), the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"), whether Lazy Dog's application and hiring policies, practices and systems are discriminatory, and what

---

[2] Consistent with the Settlement Agreement, the California Class Members and Settlement Collective Members, along with the Named Plaintiffs, are collectively referred to as the"Covered Individuals."

remedies are warranted.

**3.**   The Class Representatives' claims are typical of those of the Settlement

Class they propose to represent, because they arise out of the same policies and

practices and course of conduct complained of by all Settlement Class Members.

**4.**   Each Class Representative is an adequate representative of the California

Class she proposes to represent, because her interests are co-extensive with those of

the Settlement Class Members, and she has retained experienced counsel to

represent her and the Settlement Class Members.

**5.**   Questions of law or fact common to the Settlement Class predominate over

individualized issues, and a class action is superior to other available methods for

the fair and efficient adjudication of this controversy.

**6.**   Because certification of the Settlement Class is proposed in the context of a

settlement, the Court need not inquire whether the case, if tried as a class action,

would present intractable management problems.

Accordingly, for settlement purposes, the Court hereby certifies the

California Class under Rule 23(a) and (b)(3).

## C. <u>Certification of Federal ADEA Collective Action under 29 U.S.C. §</u>

### <u>216(b)</u>

For the reasons stated herein, the Court hereby finds and concludes, for

purposes of settlement only, that the Settlement Collective fulfills the requirements

for a collective action under §216(b).

**1.** Under § 216(b), an action may be maintained by an employee or employees on behalf of others who are "similarly situated."  Such an action under the ADEA may likewise be maintained by job applicants. (29 U.S.C.A. § 623; *Holender v. Mutual Industries North Inc*., 527 F.3d 352, 103 (3d Cir. 2008) (holding that a 59 year old job applicant had properly filed an EEOC charge of age discrimination within the meaning of the ADEA).

**2.** Here, the Settlement Collective Members are similarly situated for purposes of a collective action under § 216(b) in that they are unsuccessful applicants to Covered Positions at Lazy Dog, and they have alleged they were affected by policies, practices, and systems that have the purpose and/or effect of denying them employment opportunities because of their age.

**3.** Accordingly, for settlement purposes, certification under § 216(b) is appropriate for those Settlement Collective Members (a) who applied to and were denied Covered Positions on or after December 4, 2016, (b) who were aged 40 or older at the time of application, and (c) who opted in to this Litigation pursuant to the federal Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA") on or before _____.

## III.   APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

### A. <u>Class Representatives</u>

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED COLLECTIVE AND CLASS ACTION SETTLEMENT

The Court finds and concludes that, for purposes of settlement only, Class Representatives have claims typical of the members of the California Class and Settlement Collective they propose to represent, and they are adequate representatives of the California Class and Settlement Collective they seek to represent. The Court hereby appoints Plaintiffs Cathy Sypherd, Patricia Brummett, and Kimberly Watt to serve as Class Representatives.

## B. Class Counsel

The Court finds and concludes, for purposes of settlement only, that Hogue & Belong, APC, and its attorneys of record in this case, Jeffrey Hogue and Tyler Belong, have extensive experience and expertise in prosecuting discrimination, class, and collective actions. The Court appoints Hogue & Belong, APC, as Class Counsel.

## IV.    PRELIMINARY APPROVAL OF SETTLEMENT

The Court has reviewed the terms of the Settlement, including the plan of allocation and the release of claims.  The Court has also read and considered the declaration of Jeffrey L. Hogue in support of preliminary approval.  Based on review of those papers and the Court's familiarity with this case, the Court finds and concludes that the Settlement is the result of arms-length negotiations between the Parties conducted after Class Counsel had adequately investigated Plaintiffs' claims and became familiar with their strengths and weaknesses.  The assistance of

two experienced mediators in the settlement process over the course of two separate mediations supports the finding that the Settlement is noncollusive.

Based on all of these factors, the Court concludes that the proposed Settlement meets the criteria for preliminary settlement approval. The Settlement has no obvious defects and falls within the range of possible approval as fair, adequate, and reasonable, such that notice to the Covered Individuals is appropriate. Accordingly, the Settlement is hereby preliminarily approved.

## V.    APPROVAL OF THE NOTICE PLAN

The Parties have also submitted for this Court's approval a proposed class notice and claim form (Exhibits 1 ("Notice") and 2 ("Claim Form") to the Settlement Agreement). After carefully reviewing these documents, the Court finds and concludes as follows:

### A. <u>Best Notice Practicable</u>

The Notice is the best notice practicable under the circumstances and allows the Covered Individuals a full and fair opportunity to consider the Settlement. The Notice is based on the model forms supplied by the Federal Judicial Center and the Northern District of California's Procedural Guidance for Class Action Settlements, and it fairly, plainly, accurately, and reasonably informs the Covered Individuals of appropriate information about: (1) the nature of this action, the definition of the Settlement Class and the Settlement Collective, the identity of Class Counsel, and the essential terms of the Settlement, including the plan of allocation, and notice of

how to obtain other important documents in the case; (2) Plaintiffs' forthcoming application for the Class Representatives' Service Awards and the Class Counsel attorneys' fees and costs award; (3) how Covered Individuals' settlement shares will be calculated; (4) this Court's procedures for final approval of the Settlement, and about the Covered Individuals' right to appear through counsel if they desire; (5) how to submit a Claim Form, comment on or opt out of the Settlement, if a Covered Individual wishes to do so, (6) how to obtain additional information regarding this action and the Settlement, reference to the case docket via PACER or in person at any of the Court's locations; and (7) the date of the Final Approval Hearing and that the date may change without further notice to the Settlement Class or Settlement Collective, and that Covered Individuals may check the Court's PACER site to confirm that the date has not been changed.

The proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all individuals who would be bound by the Settlement. Under this plan, the Settlement Administrator will distribute the Notice to all Covered Individuals by first-class mail to their last known mailing addresses, and will send them via email to their last known email addresses. In addition, the Settlement Administrator will send reminder notices by mail or email to those who have failed to opt out or submit all required forms by the time the response deadline approaches. And, the Settlement Administrator will run up to two separate address

checks (i.e., skip-traces) to attempt to locate correct addresses for any notices that have been returned as undelivered.

### B. **CAFA Notice of Proposed Settlement**

Within ten (10) calendar days after the Court's Preliminary Approval Order of the Settlement, the Settlement Administrator shall provide notice of the proposed Settlement to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b). The Settlement Administrator shall draft and prepare the CAFA notice in conformity with 28 U.S.C. § 1715, and subject to Lazy Dog's approval. The Settlement Administrator shall provide a draft of the CAFA Notice to Lazy Dog no later than three (3) calendar days after the Court's Preliminary Approval Order of the Settlement. On this basis, the notice of the Settlement is approved, and the Court finds that the above-referenced actions will discharge Lazy Dog's obligations under CAFA to provide notice to the appropriate federal and state officials.

### C. **Approval**

Accordingly, the Court finds and concludes that the proposed plan for distributing the Notice will provide the best notice practicable, satisfies the notice requirements of Rule 23(e) and 29 U.S.C. section 216(b), and satisfies all other legal and due process requirements. Accordingly, the Court hereby orders as follows:

1. The Notice and Claim Form are approved.

2. The manner of distributing the Class Notice to the Covered Individuals is approved.

3. Promptly following the entry of this order, the Settlement Administrator will prepare final versions of the Notice, incorporating into them the relevant dates and deadlines set forth in this order.

4. Within fifteen (15) business days following entry of this order, Lazy Dog will provide the Settlement Administrator the same fields of applicant data previously produced to Class Counsel in the Litigation, updated to include all Covered Individuals, in the format previously produced to Class Counsel, and with incorporation of (i) applicant data from paper applications from December 4, 2016 through January 1, 2017, in the case of the Settlement Collective, and from December 4, 2015 through December 31, 2016, in the case of the California class; and (ii) the class lists relied upon in the Litigation by the Parties' respective experts (Ted Tatos for Plaintiffs, and Ali Saad, Ph.D. for Defendant).

5. Within twenty-one (21) business days after receipt of the applicant data, the Settlement Administrator will send the Notice and Claim Form to all Covered Individuals, by first-class mail to their last known address, and by email to their last known email address(es) (to those for whome an email address is available).

6. The Settlement Administrator will perform up to two skip-traces on returned mail and re-mail the Notice and Claim Form to an updated address (if any)

-11-

as soon as possible upon return of the undeliverable Notice and no later than 3 business days upon receiving the newly ascertained address.

7. Plaintiffs will file with their motion for final approval a declaration from the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Notice, and will file prior to the hearing on the motion a supplemental declaration from the Settlement Administrator as applicable.

8. The Settlement Administrator will take all other actions in furtherance of settlement administration as are specified in the Settlement.

## VI.    PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT

### A. <u>Final Approval Hearing</u>

The Court hereby schedules a hearing to determine whether to grant final approval of the Settlement (the "Final Approval Hearing") for _____, 2022, at 1:30 p.m. The date of the hearing may be changed without further notice to Covered Individuals.

### B. <u>Deadline to Submit Claim Forms</u>

All Covered Individuals who wish to submit Claim Forms must do so within forty-five (45) calendar days from the date of the initial mailing. For mailed submissions, any item mailed by the deadline, as evidenced by a postmark, shall be deemed to be timely. Submissions may be filed by mail or email.

### C. <u>Deadline to Opt Out of the Settlement</u>

#### 1.  Form of Opt-Out Request

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED COLLECTIVE AND CLASS ACTION SETTLEMENT

Any Covered Individual may opt out of participating in the Settlement by submitting a signed letter to the Settlement Administrator stating that he or she wishes to be excluded from the Settlement ("Opt-Out Statement"). The letter must include the Covered Individual's name, address, telephone number, and signature. It must also contain the following words in order to be valid: "I decline to provide a release of claims and instead elect to exclude myself from the monetary relief provisions in the Settlement in *Sypherd v. Lazy Dog Restaurants, LLC*.  That means I will not be entitled to any of the monetary proceeds of the Settlement."

## 2.  Deadline for Submitting Opt-Out Request

An Opt-Out Statement will be deemed timely submitted to the Settlement administrator if it is mailed or emailed to the Settlement Administrator by first-class mail or email and postmarked or emailed by not later than forty-five (45) days after the Settlement Administrator first mails the Class Notice to the Covered Individuals. Only those Covered Individuals who submit their Opt-Out Statement within the time and by the manner set forth in this Order will be excluded from the Settlement. Pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(2), the Settlement will have no binding effect on any Covered Individual who properly opts out of the Settlement in the manner required by this Order.

## 3.  Lazy Dog's Right to Rescind Agreement

If ten percent (10%) or more of the Settlement Collective or ten percent (10%) or more of the Settlement Class validly opt out pursuant to the process set

forth herein, Lazy Dog will have the sole right either (i) to withdraw in writing from and rescind this Settlement Agreement in which case all actions taken in its furtherance shall be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Lazy Dog is entitled to withdraw from the Settlement Agreement and has validly done so, or (ii) to modify the Settlement Agreement through further negotiations with Class Counsel.  Lazy Dog must exercise this right within ten (10) business days after the Settlement Administrator sends the final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel by email.  If Lazy Dog exercises this option, the parties will split the Settlement Administrator's costs incurred up to that date.

## D. Deadline for Filing Comments on or Objections to Settlement

Any Covered Individual who wishes to comment on or object to the fairness, reasonableness, or adequacy of the Settlement must do so in writing as provided in the Notice. Covered Individuals who have timely commented on or objected to the Settlement in writing may also appear at the Final Approval Hearing, in person or through counsel, but only if they (a) have given written notice of their intent to appear at the hearing as provided in the Notice, or (b) can show good cause why they could not provide such notice. To be considered, any comment on or objection to the final approval of the Settlement must: (a) be submitted to the Settlement Administrator either by mail or email; (b) be postmarked or emailed within forty-five (45) days after the date of the Notice mailing; (c) clearly identify the case name

and number (*Sypherd et al. v. Lazy Dog Restaurants, LLC*, Case No.: 5:20-CV-00921-FLA(KK)); and (d) clearly indicate that the objector is in fact objecting to the Settlement and that, by doing so, he or she understands that he/she is subjecting him/heself to certain court proceedings, including appearing for a noticed deposition. Any Covered Individual who does not timely submit such a written objection will not be permitted to raise such objection or appear at the Final Approval Hearing, except for good cause shown, and any Covered Individual who fails to object in the manner prescribed by this order will be deemed to have waived, and will be foreclosed from raising, any such comment or objection, except for good cause shown.

### E. <u>Deadline for Mailing and Cashing Settlement Share Checks</u>

Each Covered Individual who submits a Claim Form will be eligible to receive his or her share of the Settlement. No later than ten (10) business days after Finality, Lazy Dog will wire to the Settlement Administrator the Gross Fund Payment. The Settlement Administrator will distribute the funds from the Gross Fund pursuant to the terms of the Settlement Agreement, including mailing settlement checks to Claimants, making attorneys' fees and cost payments to Class Counsel, and making Service Awards payments to Plaintiff. Claimants will have one hundred eighty (180) calendar days from the date of issuance written on the check to cash their Settlement checks, after which time the checks will expire. Should there remain any residual from the Gross Fund after all payments are made under this

Settlement, the Settlement Administrator shall pay the residual funds to Claimants

on a *pro rata* basis (if the residual funds exceed $30,000), or to the *cy pres* designee,

California State Bar's Justice Gap Fund (if the residual funds are equal to or less

than $30,000).

## F. Submitting Motion Seeking Final Approval

As soon as practicable after the Claims Period has concluded, Plaintiffs shall

file a motion for final approval of the Settlement.

## G. Motion for Approval of Class Representatives Payment and Class Counsel's Fees and Costs Award

Not later than ten (10) business days before the expiration of the 45-day

Claims Period, Class Counsel may file a motion for approval of Service Awards for

the Class Representatives and a motion for approval of their Class Counsel

attorneys' fees and costs payment.  At Class Counsel's option, these motions may be

filed separately, or jointly as a single motion.

## VII.   PLAINTIFFS' AND CLASS MEMBERS' RELEASE

If, at the Final Approval Hearing, this Court grants final approval to the

Settlement, Plaintiffs, and every Covered Individual who does not opt out will,

pursuant to the Settlement, be adjudicated to have granted the release of "Released

Claims" as set forth in the Settlement Agreement.  In addition, each Covered

Individual, by submitting a Claim Form and/or cashing his or her settlement check,

releases all Released Claims as set forth in the Settlement Agreement.  Finally, the

Named Plaintiffs who elect to receive a Service Award will be required to sign the

General Release as set forth in Exhibit 4 of the Settlement Agreement in order to receive a Service Award.

## VIII.   APPOINTMENT OF SETTLEMENT ADMINISTRATOR

CPT Group, Inc. is hereby appointed Settlement Administrator to carry out the duties set forth in this Preliminary Approval Order and the Settlement.

## IX.   SCHEDULING ORDER

The following schedule sets the sequence for the relevant dates and deadlines based on the preliminary approval of the Settlement on _____, 2022.

| Event | date |
| --- | --- |
| Lazy Dog to provide class list data to Administrator | |
| Notice disseminated by Settlement Administrator | |
| Reminder notices | |
| Fee and Service Award motions due | |
| Deadline for Class Members to submit requests for exclusion and/or objections | |
| Deadline for Class Members to submit Claim Forms | |
| Settlement Administrator submits final report to Parties | |

| | |
|---|---|
| Final Approval Motion due | |
| Lazy Dog decides whether to rescind the Settlement | |
| Final approval, Service Award fee reply briefs | |
| Final Approval Hearing | |
| Effective Date (assuming no appeals) | |
| Funding of Settlement | |
| Checks mailed to Class Members | |
| Approximate deadlines for Class Counsel to report to the Court regarding implementation of the Settlement (to be formally set at the Final Approval Hearing) | |

IT IS SO ORDERED.

DATED: December 17, 2021

By:   _s/_____

Hon. Fernando L. Aenlle-Rocha

Exhibit "B"

Tweet

---

# Host/Hostess

🖼 Hospitality    🔖 HOSTH02630

Please sign in to apply
with LinkedIn

Apply now    **Sign in with LinkedIn**

Posted: May 28, 2020

---

Part-Time

---

Mission Valley
Mission Valley | 012MVA
1202 Camino Del Rio N
San Diego, CA 92108, USA

# Job Details

## Description

Host/Hostess: JOIN THE FUN! If you thrive on greeting guests with a genuine smile, enthusiasm, and warmth upon their arrival, making them feel welcome, then this is the job for you. We are looking for Enthusiastic, Motivated, Team-Oriented individuals that want to join a company that has a Culture of Caring! Are you outgoing and do you have a track record of going the extra mile? Are you motivated and have the ability to work as a team? Do you want a flexible schedule and a fun, fast-paced environment? Do you want to be part of a company where you have real advancement opportunities?

You're Good At

- You think it's super fun to interact with guests as they arrive and as they leave the restaurant to ensure a positive dining experience.
- You ensure that if there is a wait time, you notify the guests of their wait time and enter their name into the computer seating system and issue a pager.
- You know how to operate the computer seating system.
- You understand the proper techniques of leading a guest to their table, seating, distributing the menus, and final words.
- You answer the phone and respond to questions concerning the menu, reservations and the restaurant.
- You can address difficult situations and guest's complaints through AIM - Apologize, Investigate, and involve Management.

- You communicate clearly. You write well. You speak well. You can explain just about anything to anyone
- You prepare thoroughly and strive for perfection.
- You practice what you preach.

Extra Awesome

- You are guest focused and like to multi-task.
- You want to be part of a team and create fun – whistle while you work.
- You are happy, trusting, passionate and determined – Never Settle!
- You can put yourself in the others person's shoes.

# Qualifications

## Behaviors

Preferred

Loyal: Shows firm and constant support to a cause
Enthusiastic: Shows intense and eager enjoyment and interest
Detail Oriented: Capable of carrying out a given task with all details necessary to get the task done well
Dedicated: Devoted to a task or purpose with loyalty or integrity
Team Player: Works well as a member of a group

## Education

Preferred

High School or better.

## Licenses & Certifications

Preferred

Food Handlers Card

Lazy Dog Restaurants

Case 5:20-cv-00921-FLA-KK   Document 212-1   Filed 11/19/21   Page 107 of 116   Page ID
#:8972

Apply for
# Host/Hostess

You can use a resume to fill out your application faster and it will be added automatically as an attachment.

---

Upload Resume

*DOC, DOCX, or PDF (Max file size 6MB).*

---

## Contact Information

The name on the account you are currently logged in with is displayed below. If you need to make changes to your name, please go to the My Presence page before submitting your application. If this is not your account, please sign out and start the application process again.

\* Primary Phone

Secondary Phone

\* Country

Choose...

\* Address 1

Address 2

\* City

\* Zip / Postal Code

☐  Willing to relocate

Work Experience   ✚

Education   ✚

Skills   ✏

Behaviors   *What is your work style?*   ✏

Motivations   *What gets you out of bed in the morning?*   ✏

Licenses and Certifications   ✚

Links   ✏

Documents   ⌃

Include documents with your application: choose from your previously uploaded documents or upload new ones.

Max 10 attached documents per application.

*No documents uploaded.*

Availability   ⌃

Which days are you available to work?

## Work Experience

* Job Title

* Company / Organization

Location

* From

Choose...

To

Choose...

Leave this blank if you currently work here.

Description

2000 characters left

Save        Cancel

Education  **+**

Skills  🖉

Behaviors  🖉

Motivations  🖉

Licenses and Certifications  **+**

Work Experience ✚

## Education

**\* School Name**

Choose...

**\* Level of Education / Degree**

Choose...

Major

Choose...

Minor

Choose...

From

Choose...

To

Choose...

Or expected graduation date. For high school, only provide a date if you have not yet graduated.

Description

1500 characters left

Save        Cancel

Skills ✎

Behaviors ✎

Motivations ✎

Work Experience **+**

Education **+**

Skills ✏️

Behaviors ✏️

Motivations ✏️

## Licenses and Certifications

* License / Certification Name

Choose...

License Number

Date Achieved

Renewal Date

Save      Cancel

Links ✏️

## Documents

**Include documents with your application:** choose from your previously uploaded documents or upload new ones.

Max 10 attached documents per application.

*No documents uploaded.*

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|

### Notes

4000 characters left

## Questions

\* How did you hear about this opportunity?

Choose...

Were you referred by a current employee?

○ Yes

○ No

When can you start?

June 8, 2020 📅

---

\* Are you at least 18 years of age?

○ Yes

○ No

\* Do you have any schedule restrictions that would prevent you from being available for any day time or night time shift?

○ Yes

○ No

\* Have you ever applied for employment or worked for Lazy Dog Restaurant? If yes, when and where? If no, enter N/A.

4000 characters left

* Do you have any friends or relatives employed by Lazy Dog restaurant? If yes, please indicate Name and Location. If no, enter N/A.

4000 characters left

* Have you ever been counseled, disciplined, or discharged for cash handling situations (over/short), Guest service issues or inability to meet/adhere to company standards? If yes, please explain. If no, please enter N/A.

4000 characters left

* Has the EEOC, another agency, or civil court determined you have engaged in harassment (sexual or other)?

○ Yes

○ No

* If hired, can you submit verification of your legal right to work in the United States?

○ Yes

○ No

* Please explain any gaps in employment, if applicable.

4000 characters left

* Agreement to Arbitrate: I agree that to the fullest extent allowed by law, any controversy, claim or dispute between me and Lazy Dog Restaurants, LLC and/or any of its related entities, holding companies, parents, subsidiaries, divisions, officers, shareholders, directors, employees, customers, agents, insurers, predecessors, successors, and assigns (collectively, "Company") relating to or arising out of my application for employment, employment, or the cessation of my employment will be submitted to final and binding arbitration as the sole and exclusive remedy, regardless of whether such dispute is initiated by Company or me. All claims subject to this Agreement must be arbitrated in an individual capacity. Both Company and I expressly waive our rights (i) to utilize class or collective action procedures in asserting a claim subject to this Agreement; and (ii) to the extent permitted by applicable law, including the Federal Arbitration Act, to utilize representative action procedures in asserting a claim subject to this Agreement. Under no circumstances shall the arbitrator have jurisdiction to decide any dispute on anything other than an individual basis. The arbitration shall be before a neutral arbitrator of JAMS in the county in which I applied for employment, work or last worked for Company, for determination in accordance with the JAMS Employment Arbitration Rules and Procedures (including any subsequent modifications or amendments to such Rules), to the extent those Rules do not conflict with this Agreement. (I understand that a copy of the most current JAMS Rules may be obtained from Company's Human Resources Department or by visiting http://www.jamsadr.com/rules-employment-arbitration/.) In any such arbitration, the parties may conduct discovery to the same extent as would be permitted in a court of law. The arbitrator will issue a written decision stating the essential findings and conclusions on which the award is based, and will have full authority to award all remedies that would be available in court. Company will pay all arbitrator's fees and costs beyond what would normally be incurred had the matter been resolved in court. Any judgment upon the award rendered by the arbitrator may be entered in any court in the county where the arbitration award was rendered. Questions of arbitrability, including whether claims can proceed on a class, collective, or representative basis, may only be decided by a court. This Agreement does not affect my right to file an administrative charge with the National Labor Relations Board, the Equal Employment Opportunity Commission, or any state agency charged with enforcement of fair employment practice laws. Further, nothing in this Agreement shall be deemed to alter any statutory obligation I may have to exhaust administrative remedies prior to filing a claim. I may present such claims to the appropriate court or governmental agency, but Company and I agree to arbitrate all rights to any form of recovery or relief, including monetary or other damages (except for workers' compensation and unemployment insurance claims). This Agreement is governed by and enforceable under the Federal Arbitration Act. If for any reason the Federal Arbitration Act is held not to apply to this Agreement or any portion of it, the Agreement shall, to that extent, be governed by and enforceable under the laws of the state in which I applied for employment or was last employed by Company. If any provision of this Agreement is found to be unenforceable, the remainder of this Agreement shall remain in full force and effect, as if the unenforceable or invalid provision did not exist. BY AGREEING TO THIS BINDING MUTUAL ARBITRATION PROVISION, BOTH I AND COMPANY GIVE UP ALL RIGHTS TO A TRIAL BY JURY.

○ Yes

○ No

* Reference Check Authorization: I authorize Lazy Dog to contact my former employers, references, and any and all other persons and organizations for information bearing upon my qualifications for employment. I further authorize the listed employers, schools and personal references to give Lazy Dog all information about my previous employment and education, along with any other pertinent information they may have, and I agree to hold them and Lazy Dog harmless from any and all liability arising from the reference checks.

○ Yes

○ No

* At-Will Employment: I agree and understand that, if I am hired, my employment with Lazy Dog will be at-will, which means that Lazy Dog or I may end the employment relationship at any time, with or without cause or prior notice. I also understand that this at-will aspect of my employment may not be changed except by an individualized written employment agreement signed both by Lazy Dog's CEO and me.

○ Yes

○ No

* Truthful Statements: I certify that the answers given by me to questions on the job application and statements made by me are complete and true to the best of my knowledge and belief. I understand that any misrepresentation, falsification, or omission of information may result in denial of employment or, if hired, may result in termination. I understand that Lazy Dog will consider this job application active for 60 days from the date of submission, after which I must reapply if interested in employment.

○ Yes

○ No

---

## EEOC - Voluntary Self-Identification Survey

This employer is required to notify all applicants of their rights pursuant to federal labor laws. For further information, please review this notice from the Department of Labor: EEO is the Law poster. You may have additional rights pursuant to recent amendments to federal labor laws. Please review these protections from the EEO is the Law Supplement.

This employer is subject to certain nondiscrimination and/or affirmative action recordkeeping and reporting requirements which require the employer to invite applicants to voluntarily self-identify their race/ethnicity and gender.

* Gender

Choose...

☐ I decline to say

* Ethnic Origin ❓

Choose...

☐   I decline to say

Once you leave this page, you won't be able to edit the information you entered.

Submit          Cancel

Lazy Dog Restaurants