UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHY SYPHERD, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>LAZY DOG RESTAURANTS, LLC,<br><br>　　　　　　Defendant. | Case No. 5:20-cv-00921-FLA (KKx)<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 212) AND DENYING OTHER MOTIONS AS MOOT (DKTS. 94, 146, 153, 161, 177)**<br><br>Date:　　　　December 17, 2021<br>Time:　　　　9:00 a.m.<br>Courtroom:　　6B |

## RULING

Before the court is Named Plaintiffs' Motion for Preliminary Approval of Collective and Class Action Settlement ("Motion"). Dkt. 212 (Mot.). Named Plaintiffs Cathy Sypherd, Patricia Brummet, and Kimberly Watt (collectively, "Named Plaintiffs") move for preliminary approval of the settlement of this putative class action and collective action. Defendant Lazy Dog Restaurants, LLC ("Defendant" or "Lazy Dog") does not oppose the Motion.

1

On December 17, 2021, a hearing was held on the Motion, and the court subsequently took the Motion under submission. Dkt. 216. For the reasons stated herein, the court GRANTS Named Plaintiffs' Motion and preliminarily APPROVES the Collective and Class Action Settlement.

## **BACKGROUND**

On May 1, 2020, Named Plaintiffs brought the instant action against Defendant Lazy Dog, a national restaurant chain, on behalf of themselves and other similarly situated job applicants, asserting claims for age discrimination under California's Fair Employment and Housing Act ("FEHA") and the Age Discrimination in Employment Act of 1967 ("ADEA"). Dkt. 1 ("Compl."); Dkt. 13 ("FAC"). Named Plaintiffs allege Defendant engaged in discriminatory hiring practices against individuals 40 years of age or older for nonmanagerial front of the house positions, including hosts and hostesses, servers, and bartenders in violation of FEHA and ADEA ("Covered Positions").[1] FAC ¶¶ 1-2. Defendant disputes and denies Named Plaintiffs' claims and contends it has complied fully with all applicable laws at issue in this matter. Dkt. 23.

On October 1, 2021, the parties filed notice they had reached a tentative settlement of Plaintiffs' claims. Dkt. 210. The parties' final agreement is set forth in the Collective and Class Action Settlement Agreement and Release ("Settlement"). Named Plaintiffs now seek preliminary approval of the Settlement.

/ / /

/ / /

/ / /

---

[1] The Settlement defines the term "Covered Position" to mean "non-managerial front of the house positions, including hosts, servers, bartenders, bussers, runners, and take-out." Dkt. 212-1 (Hogue Decl. Ex. A ("Settlement")) ¶ 1.11.

**SETTLEMENT TERMS**

I. **Proposed Class**

For purposes of the settlement, Named Plaintiffs request the court certify both a California class under Federal Rule of Civil Procedure 23 ("Rule 23"), and a nationwide collective pursuant to 29 U.S.C. § 216. Mot. 5; Settlement ¶¶ 1.3, 1.34.

The "California Class" is defined as: all applicants who, between December 4, 2015 to March 17, 2022, inclusive, "(a) applied for and were denied a Covered Position in California, or (b) resided in California at the time they applied to a Covered Position and were denied; and were aged 40 or older at the time of application." Settlement ¶ 1.3.

The "Settlement Collective" is defined as: all applicants "(a) who applied to [Lazy Dog] and were denied Covered Positions on or after December 4, 2016, (b) who were aged 40 or older at the time of application, and (c) who opt(ed) into this Litigation pursuant to the federal Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ('ADEA') on or before October 8, 2021." *Id.* ¶ 1.34.[2]

II. **Payment Terms**

In full settlement of the claims asserted in this lawsuit, Defendant agrees to pay a total gross fund of $2,150,000 ("Gross Fund"). Mot. 6; Settlement ¶ 3.1. Named Plaintiffs estimate a net settlement amount of $1,276,000 after court-approved Class Counsel's attorney's fees, litigation costs, Named Plaintiff service awards, and

---

[2] The Settlement is inconsistent in defining the relevant period for the Settlement Collective. While the definition of the term "Settlement Collective" does not include an end-date, the definition of the term "Covered Period" appears to limit the Settlement Collective to applicants who applied to Lazy Dog from "December 4, 2016 to Preliminary Approval or March 17, 2022 (whichever is earlier)." *See* Settlement ¶¶ 1.34, 1.10. This inconsistency should be corrected before notice is sent to California Class and Settlement Collective members.

3

settlement administration costs are subtracted from the Gross Fund.[3] Dkt. 219 (modifying estimates stated in Mot. 6). The Settlement defines the "Distribution Fund" as the funds that remain after Lazy Dog's share of any applicable federal, state, and local payroll taxes (erroneously listed as "takes"), and a Reserve Fund of $55,000 are further subtracted from the net settlement amount. Settlement ¶¶ 1.15, 9.1.[4]

The Settlement divides the Distribution Fund into a "California Fund" for participating California Class members and a "Collective Fund" for participating Settlement Collective members. *Id.* ¶¶ 3.3.1-2. The participating California Class members and Settlement Collective members who submit a valid claim form timely will receive their share of the settlement proceeds automatically on a pro rata basis from their respective funds. *Id.* At the hearing, Named Plaintiffs explained that they intended the California Fund to constitute a percentage of the Distribution Fund equal to the number of California Class members who submit a valid claim form timely (numerator) divided by the total number of California Class members and Settlement Collective members who submit a valid claim form timely (denominator).[5]

---

[3] On January 13, 2022, the parties filed a Joint Notice of Modification to Estimated Claims Administration Costs of Collective and Class Action Settlement, explaining an increase in estimated administration costs due to an initial oversight. Dkt. 219. The parties state the amount will be allocated from the Gross Fund, and no other numbers have changed. *Id.* The parties, thus, reduce their estimate of the net settlement amount from $1,283,000 to approximately $1,276,000.

[4] The Reserve Fund is to be set aside to pay any post-Finality "Reserve Claims" during the 15-month "Reserve Period" beginning at Finality. Settlement ¶ 9.1. Any portion of the Reserve Fund that remains unclaimed is to be redistributed to Claimants, in the manner set forth in the Settlement. *Id.* ¶ 9.4.

[5] The Settlement defines the California Class Fund as "the Distribution Fund [Net Settlement Amount] multiplied by the percentage of the California Class (numerator) vis-à-vis the Settlement Collective Members (denominator)." Settlement ¶ 1.4. The Settlement Collective Fund is defined as "the Distribution Fund [Net Settlement Amount] less the California Payment Fund [California Class Fund]." *Id.* ¶ 1.35. At

The Collective Fund is to constitute the remainder of the Distribution Fund and comprise a percentage of the Distribution Fund equal to the number of Settlement Collective members who submit a valid claim form timely (numerator) divided by the total number of California Class members and Settlement Collective members who submit a valid claim form timely (denominator). Individuals who qualify as both California Class members and Settlement Collective members will receive one (1) payment on a pro rata basis from the California Fund and one (1) payment on a pro rata basis from the Collective Fund, provided they submit a valid claim form timely and do not request exclusion. Settlement ¶ 3.3.2.

The Settlement is non-reversionary, and no amount will revert to Defendant. *Id.* ¶¶ 1.19, 9.4. Any amount greater than $30,000 that remains unclaimed after distribution will be redistributed on a pro rata basis, except that no claimant will receive less than $10. *Id.* ¶ 9.4. If the redistribution fund is less than or equal to $30,000, it will be given as a cy pres donation to the California State Bar's Justice Gap Fund. *Id.*

### III.  Attorney's Fees, Costs, and Service Awards

The Settlement authorizes class counsel to petition the court for approval of attorney's fees and costs in an amount not to exceed 30% of the Gross Fund, or $645,000, and reimbursement of actual costs not to exceed $175,000 for litigation costs incurred. *Id.* ¶ 4.1.

Class counsel will also petition the court for approval of service awards of no more than $10,000 for each Named Plaintiff. *Id.* ¶¶ 5.1-5.3. This is in addition to any recovery from the Distribution Fund. *Id.*

/ / /

/ / /

---

the hearing, Plaintiffs admitted that these definitions are not what the parties had intended and incorrect.

5

## IV. Releases

Under the release, Named Plaintiffs, participating California Class members, and participating Settlement Collective members will release and discharge Defendant and related parties from claims for age discrimination arising out of the same set of operative facts as those in this litigation, except that participating Class Members who are not participating Settlement Collective members will not release ADEA claims ("Released Claims"). *Id.* ¶ 11.1. Additionally, Named Plaintiffs, in their individual capacities, have agreed to a general release, including all known and unknown claims pursuant to California Civil Code section 1542 in exchange for their service awards. *Id.* ¶ 11.3, Ex. 3.

## V. Notice to Settlement Class

The settlement administrator will mail and, to the extent known, email the notice and claim form to each California Class and Settlement Collective member. *Id.* ¶ 8.2.1. Reminder notices via mail or email will be sent to those who do not respond before the end of the claims period. *Id.* ¶ 8.2.2.

The notice will provide descriptions of the litigation and settlement, instructions for participating in or opting out of the settlement, instructions for objecting to the settlement, details on the final settlement approval hearing, contact information for class counsel, and instructions for obtaining court records. *Id.*, Ex. 1 ("Notice").

## DISCUSSION

The court must first address whether the California Class and Settlement Collective members may be preliminarily certified for settlement purposes only, before evaluating the fairness, adequacy, and reasonableness of the proposed settlement, and reviewing the adequacy of the proposed notice.

## I. Rule 23 California Class Certification

Class certification is a prerequisite to preliminary settlement approval. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) ("[A]lthough the fact of settlement is relevant to the class certification analysis, certification must

nonetheless meet Rule 23(a) and (b)[ ] requirements…"). Class certification is appropriate only if each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23(a), the plaintiff must show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### A. Rule 23(a) Requirements

The proposed class meets each of the Rule 23(a) factors for purposes of the subject Motion. First, the proposed class is sufficiently numerous. While "[n]o exact numerical cut-off is required," "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). The parties represent that there are approximately 2,242 potential members of the class. Numerosity is satisfied.

Second, the claims appear to involve questions of fact and law common to the class. The "commonality" requirement of Rule 23(a)(2) is minimal and "only requires a single significant question of law or fact" common to putative class members. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n. 31 (9th Cir. 2022)). Commonality requires the plaintiff to demonstrate that the class members' claims depend upon a common contention that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see id.* ("What matters to class certification … is not the raising of common 'questions' … but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation").

Here, the claims of the class members appear to turn on Defendant's alleged uniform policies and procedures, which were applied to all new job applicants. Mot. 11. For purposes of the subject Motion, Named Plaintiffs contend Defendant utilized a standard online application with information fields permitting Defendant to gauge applicants' estimated ages and uniform standardized hiring policies, as well as a practice of refusing to investigate age-based complaints concerning hiring policies. *Id.* at 12. According to Named Plaintiffs, Defendant's application data demonstrates Lazy Dog denied employment to age protected employees at a statistically significant higher rate than applicants under the age of 40. *Id.* (citing Dkt. 212-1, Hogue Decl. ¶ 4). Defendant does not challenge Named Plaintiffs' arguments for purposes of the subject Motion. *See* Settlement ¶ 2.3. Accordingly, the court preliminarily finds Defendant's practices establish significant common questions of fact and law sufficient to satisfy commonality.

Third, Plaintiffs meet the typicality requirement. Typicality in this context means that the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338 (2011), *as recognized in In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 975 F.3d 770, 777-78 (9th Cir. 2020). Here, Named Plaintiffs' claims arise from the same alleged uniform policies and practices – specifically, that putative class members aged 40 and older were denied employment subject to Defendant's uniform hiring policies, practices, and standards. These claims are based on the same facts and same legal theories applicable to the rest of the California and nationwide members. Defendant does not challenge Named Plaintiffs' arguments for purposes of the subject Motion. *See* Settlement ¶ 2.3. Accordingly, the court preliminarily finds typicality is satisfied.

Finally, Named Plaintiffs and their counsel satisfy the adequacy requirement for representing absent class members. This requirement is met where the named

plaintiffs and their counsel do not have conflicts of interest with other class members and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. Here, Named Plaintiffs' interests appear to be coextensive with the interests of the class, and there is no evidence to suggest Named Plaintiffs or their counsel have any conflict of interest with other class members. *See* Mot. 12. Named Plaintiffs were informed of their fiduciary duties prior to agreeing to act as class representatives and appear to have taken their duties seriously throughout this litigation. *Id.* (citing Dkt. 212-2, Hogue Decl. ¶ 2). Additionally, Named Plaintiffs' counsel appears to be well-qualified to handle this class action litigation, with substantial experience litigating, certifying, and trying large employment class actions. Mot. 12-13 (citing Dkt. 212-2, Hogue Decl. ¶¶ 54-57). Accordingly, adequacy of representation is met for purposes of the subject Motion.

   **B.** **Rule 23(b)(3) Requirements**

  Next, Named Plaintiffs seek certification under Rule 23(b)(3), which requires the court to find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The requirement is satisfied if a plaintiff establishes that a 'common nucleus of facts and potential legal remedies dominates' the litigation." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (quoting *Hanlon*, 150 F.3d at 1022).

  As stated, questions of law and fact common to the putative class members appear to predominate over individualized inquiries. All claims concern the same alleged uniform hiring policies, practices, and standards, and the question of whether they violated federal and state laws. These common questions represent a common nucleus and can be resolved for all class members in a single adjudication. Further, a class action appears to be a far superior method of adjudicating the claims, as it would be inefficient for all potential members to bring individual actions and needlessly

9

costly for each class member to bring these actions alone. Defendant does not challenge Named Plaintiffs' arguments for purposes of the subject Motion. *See* Settlement ¶ 2.3. Accordingly, the court finds that Rule 23(b)(3) is satisfied for purposes of the subject Motion.

### C. Conclusion Regarding Class Certification

As each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met, the court preliminarily certifies the proposed class for settlement purposes.

## II. FLSA Settlement Collective Certification

The court next addresses whether it is appropriate to certify preliminarily the collective action for purposes of settlement.

The ADEA makes it unlawful for an employer to discriminate against employees on the basis of age. 29 U.S.C. § 623(a)(2). Employees may bring collective age discrimination actions pursuant to 29 U.S.C. § 626(b), which incorporates enforcement provisions of the Fair Labor Standards Act of 1938 ("FLSA"). *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 298-99 (N.D. Cal. 1991); *Pfohl v. Farmers Ins. Grp.*, Case No. 2:03-cv-03080-DT (RCx), 2004 WL 554834 at *9, n. 6 (C.D. Cal. Mar. 1, 2004).

"[A]n employee may bring a FLSA collective action on behalf of himself/herself and other employees who are 'similarly situated' and who have filed written consents to join the action." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015). Although the FLSA does not define the term "similarly situated," the Ninth Circuit has concluded that "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018).

The decision to certify a collective action under the FLSA is within the discretion of the court. *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989

1  (C.D. Cal. 2006).  The Ninth Circuit has established a two-step inquiry for
2  certification of a FLSA action.  *Campbell*, 903 F.3d at 1110.  Under the first step,
3  plaintiffs may move for "preliminary certification" of the collective action, contending
4  they have at least facially satisfied the "similarly situated" requirement.  *Id.* at 1100;
5  *see also Heath v. Google Inc.*, 215 F. Supp. 3d 844, 850 (N.D. Cal. 2016) ("the Court
6  is to make an initial 'notice-stage' determination of whether potential opt-in plaintiffs
7  are 'similarly situated' to the represented plaintiffs").  At the second step, once
8  discovery is complete, the party opposing the certification may move to decertify the
9  class.  *Id.*

10     As stated, Named Plaintiffs contend they and the Settlement Collective
11 members were unsuccessful applicants to Covered Positions with Lazy Dog, 40 years
12 of age or older, and subjected to the same hiring practices and policies by Defendant.
13 Mot. 10-12.  Shared issues of law and fact stem from allegations of uniform policies,
14 practices, and systems that denied employment opportunities in violation of the
15 ADEA.  Accordingly, the court finds Named Plaintiffs and the members of the
16 Settlement Collective members have satisfied their burden under the first step to
17 demonstrate they are "similarly situated."  *See Campbell*, 903 F.3d at 1100.
18 Defendant does not oppose Named Plaintiffs' arguments for purposes of the subject
19 Motion.  *See* Settlement ¶ 2.3.  Thus, there is no need for the court to address the
20 second step, as decertification is not at issue here.  The court, therefore, preliminarily
21 certifies the Settlement Collective members for purposes of settlement.

22 **III.**   **Fairness of Settlement Terms**
23     **A.**   **Class Action**
24     The court considers whether the proposed settlement warrants preliminary
25 approval.  For preliminary approval, "the court evaluates the terms of the settlement to
26 determine whether they are within a range of possible judicial approval."  *Spann*, 314
27 F.R.D. at 319 (internal quotation marks omitted).  A court may preliminarily approve
28 a settlement and direct notice to the class if "the proposed settlement appears to be the

product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal citations and quotation marks omitted). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026.

### 1. Adequacy of Negotiations

For purposes of the subject Motion, the court is satisfied that the settlement agreement was the product of "serious, informed, non-collusive negotiations." *See Spann*, 314 F.R.D. at 319. Here, the settlement appears to have been reached after counsel vigorously litigated this matter. The parties conducted extensive discovery – including eleven sets of discovery, twelve depositions, and four motions to compel – and motion practice including two Motions to Dismiss, a Motion for Approval of Collective Notice, a Motion for Class Certification, and a Motion for Summary Judgment. Dkt. 212-2 Hogue Decl. ¶¶ 41-42, 44. Prior to reaching this settlement, the parties mediated twice with two different mediators experienced in employment law and class actions. *Id.* at ¶¶ 49-50. The course of the proceedings indicates Named Plaintiffs and their counsel have adequately represented the class and that the settlement was negotiated at arms' length. Accordingly, this factor weighs in favor of preliminary approval.

### 2. Obvious Deficiencies

Having reviewed the motion for preliminary approval and supporting materials, and considered the arguments of counsel at the hearing, the court finds no obvious deficiencies in the settlement agreement, beyond the errors concerning the distribution of settlement funds and typographical error identified above. This factor weighs in favor of preliminary approval, so long as these errors are corrected before notice is given to the California Class and Settlement Collective members.

### 3. Equal Treatment

Next, for purposes of the subject Motion, the court finds the settlement agreement does not provide improperly preferential treatment to any putative class member or collective action member. The agreement calls for distribution of the Distribution Fund on a pro rata basis in an equal proportion to the California Class and Settlement Collective members. This factor weighs in favor of preliminary approval.

### 4. Whether the Settlement Falls Within the Range of Possible Approval

Finally, the settlement agreement appears to fall within the range of possible approval. As the Ninth Circuit has explained:

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

Here, as with litigation generally, there is a risk to both parties in continuing toward trial. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). "Even

a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan*, 310 F.R.D. at 611.

For purposes of the subject Motion, the court finds the $2,150,000 Gross Fund and estimated net settlement amount and Distribution Fund are reasonable. The parties reached settlement before resolution of Named Plaintiffs' motions for approval of collective notice and class certification, as well as Defendant's motion for summary judgment, motion to exclude an expert report, and related ex parte application to exclude the same expert's opinions and expert report. The pro rata share of the settlement does not unfairly favor any member, represents a compromise, and avoids uncertainty of continued litigation for all parties involved. No portion of the settlement fund is to revert to Defendant, and the settlement agreement provides for payment to all participating class members who complete the claim form timely.

Further, the requested attorney's fee award appears to be reasonable. The district court has discretion to choose either percentage-of-the-fund or the lodestar method to determine what constitutes a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). In class actions, courts routinely award a percentage of the common fund, with a benchmark of 25% that may be adjusted when circumstances indicate a higher or lower percentage would be appropriate. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995). Here, Named Plaintiffs state they intend to apply for attorney's fees in an amount not to exceed thirty percent of the Gross Fund, or $645,000. Named Plaintiffs contend the amount is justified because of the complexity of the issues and the risks, as well as the time spent solely on a contingency basis. Mot. at 24. Further, class counsel argues its lodestar already exceeds this amount, and notes that any fees and costs awarded will be distributed after the final approval order. *Id.* The court finds the preliminary approval of these terms is appropriate.

///

### 5. Conclusion Regarding Fairness of the Class Settlement

In sum, for purposes of the subject Motion, the court finds the settlement agreement is fair and reasonable as it was adequately negotiated, lacks obvious deficiencies, does not unfairly favor any member, and falls within the range of possible approval.

## B. Collective Action

Settlements of collective action claims under the FLSA also require court approval. However, a district court is not bound to exercise the same oversight over the settlement of a collective action as it must exercise over a class action under Rule 23(e). Whereas a court's role in supervising the settlement of a class action "protects unnamed class members from unjust or unfair settlements affecting their rights," *Anchem Prods., Inc.*, 521 U.S. at 623 (internal quotation marks omitted), members of a FLSA collective action have opted in affirmatively. A court's involvement in the management of their action, thus, "has less to do with the due process rights" of those to be bound by a settlement "and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in managing collective actions in an orderly fashion." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (internal quotation marks omitted).

The test under the FLSA is similar to the standards that apply through Rule 23(e)—both focus on fairness and reasonableness. A district court presented with a proposed settlement of FLSA claims may approve the settlement agreement and dismiss the action upon finding that the litigation involves a bona fide dispute, the proposed settlement is fair and equitable to all parties, and the proposed settlement contains a reasonable award of attorney's fees. *K.H. v. Sec'y of Dep't of Homeland Sec.*, Case No. 4:15-cv-02740-JST, 2018 WL 3585142, at *7-8, 13-14 (N.D. Cal. July 26, 2018) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

The settlement agreement here appears to resolve a bona fide dispute concerning Defendant's liability under the ADEA. As stated in the parties' briefing of various motions submitted to the court during this litigation, the case involves genuinely disputed issues regarding Defendant's hiring policies and practices and whether they were discriminatory based on age. The court also finds the proposed settlement to be fair and equitable to all parties with a reasonable award of attorney's fees, as discussed above in connection with Rule 23.

Accordingly, the court preliminarily approves the settlement agreement with respect to Plaintiffs' collective claims under the ADEA, as the settlement appears to be fair and reasonable.

## IV. Sufficiency of Notice

### A. Type of Notice

Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Within 21 days of the receipt of applicant data, the settlement administrator is to mail and, to the extent known, email the notice and claim form to each California Class and Settlement Collective member. Settlement ¶ 8.2. The administrator will de-duplicate the data and run the list through the United States Postal Service's National Change of Address database prior to mailing. *Id.* If notices are returned, the administrator will perform a standard skip trace up to two times and may call last-known telephone numbers to ascertain a current address and re-send the notice. *Id.* Reminder notices via mail or email will also be sent to those who do not respond to the notice before the end of the claims period. *Id.*

The court finds these procedures sufficient and the most practicable under the circumstances.

/ / /

### B.     Content of Notice

Class notice must state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). Notice is satisfactory if it "generally describe[s] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotation marks omitted). It "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Id.*

Here, the proposed Notice contains the information required under Rule 23. The Notice states the basics of the case, the California Class and Settlement Collective claims, and a description of the settlement and payment calculations. *See* Notice ¶¶ 1-4. The Notice further states members must submit a fully completed claim form by the deadline to receive any money from the Distribution Fund. *Id.* ¶ 5. The Notice also includes instructions for opting out and exclusion from the settlement, instructions for objecting to the settlement, details on the final settlement approval hearing, contact information for class counsel, and instructions for obtaining court records. *Id.* ¶¶ 6-14. This is sufficient to satisfy the requirements of Rule 23(c)(2)(B).

### C.     Conclusion Regarding Notice

In sum, the court finds both the type and content of the proposed Notice are sufficient for granting preliminary approval of the settlement agreement.

## **CONCLUSION**

For the aforementioned reasons, the court GRANTS Named Plaintiffs' Motion for Preliminary Approval of Class Action Settlement on the conditions that the parties

1) edit the text of the Settlement and accompanying Notice to state properly how the Distribution Fund is to be distributed between California Class and Settlement Collective members, 2) edit the text of the Settlement and accompanying Notice to consistently define the "Covered Period" for the Settlement Collective, and 3) correct typographical errors, including the error with the term "taxes" in paragraph 1.15 of the Settlement, identified above. The court GRANTS preliminary approval of the settlement, preliminarily CERTIFIES the class and collective actions for settlement purposes, and APPROVES the proposed Notice and claim form, with the corrections identified above. The court also APPROVES the proposed class counsel, class representatives, and settlement administrator. Named Plaintiffs' Motions for service awards and for class counsel's fees and costs shall be filed in accordance with the Settlement provisions. *See* Settlement ¶¶ 4.1, 5.1.

The final approval hearing shall be held on February 10, 2023, at 1:30 p.m. in Courtroom 6B of the United States Courthouse, located at 350 West First Street, Los Angeles, CA 90012.

Named Plaintiffs' Motions for Approval of Notice to Potential Members of a Collective Action (Dkt. 94), Named Plaintiff's Motion to Certify Class (Dkt. 153), Defendant's Motion for Summary Judgment (Dkt. 146), Defendant's Motion to Exclude Ted Tatos' Expert Report (Dkt. 161), and Defendant's Ex Parte Application to Exclude Named Plaintiffs' Second Initial Expert Witness Disclosures and Report and Opinions of Ted Tatos (Dkt. 177) are DENIED as moot.

IT IS SO ORDERED.

Dated: August 29, 2022

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge